Kenneth GOBEN, Appellant,

v.

Phillip PARKER, Appellee.

No. 2001–CA–002266–MR.

Court of Appeals of Kentucky.

Aug. 30, 2002.

As Modified Sept. 20, 2002.

Rehearing Denied Oct. 9, 2002.

Kenneth Goben, Central City, KY, pro se.

William R. Lundy, Jr. Department of Corrections, Frankfort, KY, for Appellee.

Before COMBS, McANULTY, and SCHRODER, Judges.

## OPINION

COMBS, Judge.

Kenneth Goben, who is incarcerated in the state penitentiary at Eddyville, Kentucky, appeals *pro se* from an order of the Lyon Circuit Court which dismissed his action for declaratory judgment. The trial court held that Goben had not been deprived of "an atypical liberty interest" that would trigger due process protection. Goben argues on appeal that the disciplinary proceeding violated his rights of due process. He contends that the good time credits that he lost would constitute a deprivation of an atypical liberty interest. Based on the circumstances surrounding that loss of credits, we vacate and remand

to the trial court for a further determination.

Goben and a fellow-inmate, Charles Jones, were involved in an argument on May 5, 2000. Jones retrieved a butcher knife from the kitchen, and Goben removed an aluminum baseball bat from a closet in order to defend himself. Although both men were armed with weapons, they did not use them and instead resolved the altercation by apologizing and shaking hands rather than by resorting to violence.

Despite the peaceful ending to the dispute, four prison officials questioned both men two days later about the incident. They promised "amnesty" in exchange for their recounting the details of what had transpired, an amnesty that would supposedly prevent imposition of lock-up segregation or issuance of other disciplinary reports. Goben accepted their proposal and provided them with his version of the story.

Nonetheless, Goben was charged with possession of dangerous contraband (the baseball bat); he was placed in segregation and lost other privileges. During his disciplinary hearing, he attempted to call as witnesses the four prison officials who had questioned him. He was not allowed to call those witnesses, and he was found guilty of possessing dangerous contraband; the punishment was sustained.

Goben then appealed the decision of the disciplinary committee to the warden of the prison, Phillip Parker, who admitted that Goben had been promised amnesty by the officials. However, he claimed that he alone had the authority to make such an offer and that the four prison personnel were essentially acting in an *ultra vires* capacity.

Goben brought an action in Lyon Circuit Court, which dismissed his claim. He now appeals that order of dismissal, alleging as follows: (1) that the trial court erred in failing to find that the warden had violated his due process rights by denying him the opportunity to call witnesses; (2) that it erred in failing to grant declaratory relief to the appellant; (3) that it erred in failing to allow him time to file a reply to the appellee's response and motion to dismiss; (4) that it should have ordered that the record be expunged and that he be restored his previous status due to the false promise of amnesty.

■ Goben alleges error based on his inability to call the four prison officials to testify. However, he failed to present this issue to the trial court in his petition for a declaration of rights, and the error is not preserved on appeal for our review.

■ Citing CR[1] 12.03, Goben also contends that the court erred in denying him sufficient time to file a response to appellee's motion for judgment on the pleadings. The Commonwealth correctly refutes this argument by noting that the same rule provides that after the pleadings are closed with the filing of a response not containing a counterclaim, any party may file a motion for judgment on the pleadings. No matter outside the pleadings was involved at this juncture. CR 12.03 does not provide the right that the appellant asserts.

Goben's principal contention is that the trial court erred in refusing to order the restoration of his status prior to the incident. The court held that he had not been deprived of an "atypical liberty interest" that would warrant due process protection. Since he has already fully served the punishment of 60 days in segregation, any remedy as to that alleged wrong is moot.

1. Kentucky Rules of Civil Procedure.

However, the order of dismissal did not address the issue of loss of good time credit, which is considered a liberty interest for the purposes of the due process clause of the Fourteenth Amendment of the United States Constitution.

The loss of good time credit is of enormous personal significance to a prison inmate as a practical matter and an immediate reality. The United States Supreme Court discussed this issue in some detail in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), with respect to a Nebraska prisoner's complaint. While firmly announcing that many prison disciplinary matters do not rise to the level of the procedural safeguards inherent in due process rights, the *Wolff* court did not abandon the basic concepts of fair play and decency—nor did it sanction dishonesty in the treatment of prisoners by their custodians. As the *Wolff* court stated:

> We think a person's liberty is equally protected, even when the liberty itself is a statutory creation of the State. The touchstone of due process is protection of the individual against arbitrary action of the government. *Id.,* 418 U.S. at 559, 94 S.Ct. at 2976, 41 L.Ed.2d at 952.

The *Wolff* court ultimately determined that the disciplinary process involving the Adjustment Committee before it was not violative of due process. However, it was mindful of the danger of the potential for capriciousness and the mischievous use of authority in the context of a prison disciplinary setting. It specifically addressed such a warning as to deprivation of good time credit, analyzing it along with the more harsh sanction of solitary confinement. Of particular significance is footnote # 19, where the *Wolff* court reasoned as follows:

> The deprivation of good time and imposition of "solitary" confinement are reserved for instances where serious misbehavior has occurred. This appears a realistic approach, for it would be difficult for the purposes of procedural due process to distinguish between the procedures that are required where good time is forfeited and those that must be extended when solitary confinement is at issue. The latter represents a major change in the conditions of confinement and is normally imposed only when it is claimed and proved that there has been a major act of misconduct. Here, *as in the case of good time,* there should be *minimum procedural safeguards* as a *hedge against arbitrary determination of the factual predicate for imposition of the sanction.* We do not suggest, however, that the procedures required by today's decision for the deprivation of good time would also be required for the imposition of lesser penalties such as the loss of privileges. *Id.* 418 U.S. at 573, 94 S.Ct. at 2982, 41 L.Ed.2d at 960. (Emphasis added.)

Under the curious circumstances of this case, we believe that there should be a finding by the trial court as to whether "minimal procedural safeguards" existed as a "hedge" against the admittedly devious behavior of the four prison personnel. Warden Parker openly admitted the ploy of amnesty used by his subordinates in inducing Goben to relay the details of the incident leading to his loss of good time credit, a loss that they specifically promised would not occur as a reprisal. He excuses this conduct by declaring that they acted beyond the legitimate scope of their authority and that only he was empowered to issue such an amnesty. Additionally, Goben was not permitted to cross-examine the four officials involved. Although this error has preservation problems and arguably may have been rendered moot by the admission of Warden Parker, a meaningful hearing on remand would indicate the ne-

cessity of their participation in order to clarify implied issues of their understanding of their own authority and the extent to which their representations to a prisoner might be clothed with the apparent authority of the warden himself.

We therefore vacate the order of dismissal and remand this rather disturbing case for an evidentiary hearing to determine whether the requisite "minimal procedural safeguards" of *Wolff, supra,* adequately surrounded the loss of good time credit by appellant, Kenneth Goben.

ALL CONCUR.