RENDERED:  OCTOBER 9, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1038-MR

ELIZABETH TURPIN                                                                          APPELLANT


APPEAL FROM SHELBY CIRCUIT COURT
v.          HONORABLE CHARLES R. HICKMAN, JUDGE
ACTION NO. 18-CI-00613


JANET CONOVER, WARDEN,
KENTUCKY CORRECTIONAL
INSTITUTION FOR WOMEN                                                         APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; KRAMER AND MCNEILL, JUDGES.

KRAMER, JUDGE:  Elizabeth Turpin appeals an order of the Shelby Circuit Court

dismissing her petition for declaration of rights regarding a prison disciplinary

proceeding.  Upon careful review, we affirm.

Turpin is an inmate at the Kentucky Correctional Institution for

Women ("KCIW") for her part in a hire-for-murder plot against her husband.  She

received a sentence of life without the possibility of parole for twenty-five years, which she began serving in 1987. In November 2017, Captain Rebecca Denham concluded an investigation into an alleged incident that occurred in May 2017 at KCIW. The investigation revealed that Turpin arranged for her present husband to deposit funds into the account of Cierra Rucker, another inmate at KCIW, for the purpose of paying Rucker to assault two other inmates. As part of the investigation, Captain Denham confidentially interviewed between three and ten inmates who gave consistent statements regarding the incident. Turpin was charged under Kentucky Corrections Policies and Procedures ("CPP") 15.2 with the offense of "Inchoate[1] B 5-11, physical action against another inmate if three (3) or more inmates are involved." This charge is categorized as a major violation.

A confidential hearing was conducted. Turpin represented herself, called no witnesses, and pleaded not guilty to the charges. The hearing officer found that the confidential statements made by inmates during the investigation were both reliable and consistent with Captain Denham's report. Turpin was found guilty of the charges against her and her punishment consisted of thirty (30) days in the restricted housing unit and loss of ninety (90) days good time. The hearing

---

[1] CPP 15.2(II)(E)(1) defines an inchoate violation as one in which an inmate "a) [a]ttempts to commit the violation; b) [s]olicits another or others to commit the violation; c) [c]onspires with another or others to commit the violation; [or] d) [a]ids the action of another or others in committing the violation."

officer did not specify whether the loss of good time was statutory or meritorious.

Turpin appealed to the prison warden, Janet Conover, who denied the appeal. In her decision, Conover stated only that

> I have reviewed your appeal. CPP 15.3 states
> Meritorious Good Time awarded under this procedure
> may be forfeited if the inmate is convicted of a major
> violation. Therefore, the 90 days GTL [good time loss]
> that you received is reflected on your inmate time card as
> 90 days loss of Meritorious Good [T]ime. The due
> process requirements appear to be in order. The evidence
> is sufficient in order to establish a finding of guilt. The
> Adjustment Committee's decision will stand. Your
> appeal has been denied.

Turpin thereafter petitioned the Shelby Circuit Court for a declaration of rights against Conover. Conover filed a motion to dismiss pursuant to CR[2] 12.02. After briefing, the circuit court granted Conover's motion. This appeal followed.

Turpin makes three arguments to this Court. She argues that she was denied due process when the circuit court erroneously held that (1) KCIW's findings were supported by some reliable evidence; (2) her punishment of forfeiture of good time was legal and applicable; and (3) KCIW's finding that Turpin was guilty was within the adjustment officer's discretion when Rucker received a less harsh penalty.

---

[2] Kentucky Rule of Civil Procedure.

-3-

Turning to Turpin's first argument, we agree with Conover that it is largely unpreserved. However, Turpin requests palpable error review in her reply brief to this Court. Generally, we will not address an issue raised for the first time in a reply brief. *See Milby v. Mears*, 580 S.W.2d 724, 728 (Ky. App. 1979). However, the Kentucky Supreme Court has ruled that

> CR 76.12(1) and 76.12(4)(e) permit the appellant to file a reply brief "confined to points raised in the briefs to which they are addressed." Generally, an appellant is not obliged to anticipate that the [appellee] will challenge preservation, and once it does he is free under the rule to reply to the [appellee's] point by arguing that, even if unpreserved, the error is one that may be noticed as palpable. The [appellee], of course, may argue in its appellee's brief not only that the alleged error is unpreserved but also that it does not warrant palpable error relief. It is neither unfair to the [appellee] nor unduly burdensome to expect it to use that opportunity to address as fully as it deems necessary an issue it has raised.

*Commonwealth v. Jones*, 283 S.W.3d 665, 670 (Ky. 2009).

> When conducting palpable error review, this Court will reverse
>
> only when a "manifest injustice has resulted from the error." RCr[3] 10.26. "[T]he required showing is probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006). When we engage in palpable error review, our "focus is on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens

---

[3] Kentucky Rule of Criminal Procedure.

the integrity of the judicial process."

*Tackett v. Commonwealth*, 445 S.W.3d 20, 26 (Ky. 2014) (citation omitted).

Upon review, we discern no palpable error.  The question before us is whether there was "some evidence" to support Turpin's punishment by the disciplinary authority at KCIW.  To wit,

> the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits.  This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . ." *United States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S., at 106, 47 S. Ct., at 304. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.  *See ibid.*; *United States ex rel. Tisi v. Tod*, 264 U.S. 131, 133-134, 44 S. Ct. 260, 260-261, 68 L. Ed. 590 (1924); *Willis v. Ciccone*, 506 F.2d 1011, 1018 (CA8 1974).

*Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 455-56, 105 S. Ct. 2768, 2774, 86 L. Ed. 2d 356 (1985).

The confidential statements given by inmates to Captain Denham were considered at the disciplinary hearing; they were found to be reliable and credible.  Hence, they constitute "some evidence" necessary to satisfy the very low necessary standard of proof in a prison disciplinary action.  Turpin unconvincingly argues the statements were unreliable, but she did not offer any witnesses or

evidence to refute the statements made by various inmates. Under palpable error review, we discern no manifest injustice.

We now turn to Turpin's second argument. As Conover points out, an inmate stands to gain two types of good time credit: statutory or meritorious. Regarding statutory good time credit, KRS[4] 197.045(1)(b) states that an inmate may receive credit on her sentence if she satisfies any of the following:

> 1. Good behavior in an amount not exceeding ten (10) days for each month served, to be determined by the department from the conduct of the prisoner;
>
> 2. Performing exceptionally meritorious service or performing duties of outstanding importance in connection with institutional operations and programs, awarded at the discretion of the commissioner in an amount not to exceed seven (7) days per month; and
>
> 3. Acts of exceptional service during times of emergency, awarded at the discretion of the commissioner in an amount not to exceed seven (7) days per month.

CPP 15.3(II)(D), however, indicates that a violent offender such as Turpin "may receive *meritorious* good time to the extent authorized by KRS 439.3401(4)." (Emphasis added.) In turn, KRS 439.3401(4) states that

> [a] violent offender shall not be awarded any credit on his sentence authorized by KRS 197.045(1)(b)1. In no event shall a violent offender be given credit on his or her sentence if the credit reduces the term of imprisonment to less than eighty-five percent (85%) of the sentence.

---

[4] Kentucky Revised Statute.

Thus, Turpin may only be awarded meritorious good time credit under KRS 197.045(1)(b)(2) and (3).

Turpin's arguments in this regard are perplexing and circular in nature. She acknowledges that she is ineligible to receive statutory good time, only to then argue that statutory good time should have been forfeited before meritorious credit when she lost ninety (90) days credit as part of her punishment.[5] We note that Turpin's inmate card does appear to show that statutory good time may have been awarded to her in 1989 and again in 1996. Whether these awards were correct or incorrect is not before this Court. Regardless of what appears on her inmate card, Turpin is clearly not eligible to receive statutory good time credit.

Turpin also argues that she is ineligible for meritorious good time because she is serving a life sentence. Turpin contends that the loss of meritorious good time is "illegal" in her instance. She points to the KCIW Inmate Handbook in support of this contention and has attached relevant pages to her reply brief to this Court. We note that this argument is also unpreserved. The inmate handbook does not appear in the record before us, nor did Turpin cite to it in her appeal to Conover or the circuit court. Accordingly, we review only for palpable error and discern none.

---

[5] *See* CPP 15.3(V)(B).

-7-

Indeed, it is well-established law that an inmate has no liberty interest in the receipt of meritorious good time because it is awarded entirely at the discretion of the DOC. *Hill v. Thompson*, 297 S.W.3d 892, 897 (Ky. App. 2009). Because the award of meritorious good time under CPP 15.3 is left entirely to the discretion of prison administrators, inmates have no protected liberty interest at stake in its denial. *Anderson v. Parker*, 964 S.W.2d 809, 810 (Ky. App. 1997); *see also Marksberry v. Chandler*, 126 S.W.3d 747, 752 (Ky. App. 2003), *as modified on reh'g* (Jan. 30, 2004). We agree with Conover's reasoning that *even if* Turpin was incorrectly awarded meritorious good time, forfeiture of it amounts to no more than harmless error because her substantial rights were not affected. *Cohron v. Commonwealth*, 306 S.W.3d 489, 496 (Ky. 2010). Stated plainly, the loss of meritorious good time in no way affects the length of Turpin's life sentence.[6] Further, even if Turpin lost meritorious good time to which she was never entitled to begin with, she cannot now argue that she was denied due process in the loss of

---

[6] Turpin argues that KCIW issues meritorious good time to ineligible inmates as a "disciplinary marker." However, she does not expand upon that argument, and it is unclear what is meant by a "disciplinary marker." In Turpin's case, we can only speculate that perhaps it refers to the possibility that the parole board will consider Turpin's loss of meritorious good time in its decision to grant or deny parole (Turpin is serving a life sentence with parole eligibility after twenty-five years. She began serving her sentence in 1987.). Regardless, we cannot address an argument that Turpin fails to make. We do note, however, that there is no protected liberty interest in parole to which inmates have a legitimate claim of entitlement. *Belcher v. Kentucky Parole Bd.*, 917 S.W.2d 584, 587 (Ky. App. 1996).

that time.[7]  Given that this portion of her "punishment" was not something she was ever constitutionally or statutorily actually entitled to, we fail to see how she has suffered any type of loss, protected or otherwise.  Hence, this circular argument lacks all merit.

We are also unpersuaded by Turpin's argument that she was denied due process because Conover imposed "a different penalty" on appeal.  The adjustment officer did not specify what type of good time Turpin was required to forfeit, and Conover merely clarified that it was meritorious.  Again, we discern no error.

Turpin's third argument relies exclusively on comparison between the punishment she received and the punishment Rucker received.  Turpin argues that she received a more severe punishment that Rucker and that this decision was arbitrary.

To show her punishment was arbitrary, Turpin must show that the administrative action of KCIW (1) exceeded the scope of its granted powers; (2) did not provide her procedural due process; and (3) was not supported by "some evidence."  *See American Beauty Homes Corp. v. Louisville and Jefferson County*

---

[7] "In order to prevail on a Fourteenth Amendment procedural due process claim, a party must establish (1) that he enjoyed a protected 'liberty' or 'property' interest within the meaning of the Due Process Clause, and (2) that he was denied the process due him under the circumstances." *Marksberry v. Chandler*, 126 S.W.3d 747, 749 (Ky. App. 2003) (footnote omitted).

*Planning and Zoning Commission*, 379 S.W.2d 450 (Ky. 1964). Turpin fails to demonstrate that Conover exceeded the scope of her power or that Turpin was denied procedural due process.[8] We previously addressed the "some evidence" standard herein. It is worth noting that despite Turpin's numerous references to Rucker's punishment as compared to her own, Rucker's record is not before this Court, nor is her punishment, or anything at all specifically related to Rucker and the alleged incident that occurred in May 2017, at KCIW.

Turpin's argument that she was treated differently is actually more akin to an equal protection argument, which she does not make before us. Nonetheless, she cannot "make out a violation of [her] equal protection rights simply by showing that other inmates were treated differently." *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992).[9] Rather, Turpin would have to show that she "was victimized because of some suspect classification, which is an essential

---

[8] Inmates are entitled to the following procedural due process protections when they stand to lose good time: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *Hill*, 472 U.S. 445 at 454, 105 S. Ct. at 2773. Turpin does not contest that she received these protections.

[9] Several Kentucky Court of Appeals cases cite *Newell*, 981 F.2d at 887, for this point of law; however, they were depublished by the Kentucky Supreme Court or not published by our Court. *See*, *e.g.*, *Meacham v. Department of Corrections*, No. 2016-CA-001395-MR, 2017 WL 4847694, at *2 (Ky. App. Oct. 27, 2017), *opinion not to be published* (Mar. 14, 2018); *Yokely v. Morgan*, No. 2006-CA-000408-MR, 2007 WL 1194194, at *2 (Ky. App. Mar. 30, 2007) (unpublished).

element of an equal protection claim." *Id.* (quoting *Booher v. United States Postal Service*, 843 F.2d 943, 944 (6th Cir. 1988)). This, she has not done.

Based on the foregoing, we discern no error and AFFIRM the Shelby Circuit Court.

ALL CONCUR.


BRIEFS FOR APPELLANT:

J. Vincent Aprile II
Louisville, Kentucky

BRIEF FOR APPELLEE:

Allison R. Brown
Frankfort, Kentucky