Larry MAHONEY, Appellant,

v.

Rocky CARTER, Appellee.

No. 95–SC–802–DG.

Supreme Court of Kentucky.

Jan. 30, 1997.

Mark Wettle, Appellate Public Advocate, Louisville, for Appellant.

John T. Damron, Barbara W. Jones, Susan Alley, Justice Cabinet, Department of Corrections, Office of General Counsel, for Appellee.

LAMBERT, Justice.

Appellant, Larry Mahoney, is currently serving a term of sixteen years in the Kentucky State Reformatory, pursuant to convictions in the Carroll Circuit Court for twenty-seven counts of Wanton Endangerment, twenty-seven counts of Manslaughter in the

First Degree, and twelve counts of Assault in the First Degree.

In accordance with the policies and procedures promulgated by the Kentucky Department of Corrections, appellant was classified upon his entry into the Corrections system and received a custody classification of medium. Likewise following the policies and procedures of the Department of Corrections, in September of 1993, appellant met with the Reclassification Committee at the Kentucky State Reformatory. The Committee, utilizing the procedures adopted by the Corrections Department, calculated that appellant's custody level should be changed to minimum, and also concluded that he should be transferred to Firehouse, a facility for minimum security inmates located near the Kentucky State Reformatory in LaGrange. The Branch Manager of the Assessment/Classification Programs reviewed the conclusions of the Reclassification Committee and applied an override which served to maintain appellant at his prior custody classification.

Appellant filed a civil action in the Oldham Circuit Court alleging a violation of his rights to due process and equal protection under the law as guaranteed by the Fourteenth Amendment to the United States Constitution and his right to be free from arbitrary and capricious actions as guaranteed under Section Two of the Kentucky Constitution. The Oldham Circuit Court dismissed appellant's complaint and the dismissal was affirmed by the Court of Appeals. This Court granted discretionary review and appellant has presented two arguments for our consideration.

■■■ Appellant contends that the trial court erred when it failed to recognize that the policies and procedures of the Corrections Department, by placing substantial limitations on official discretion, create a constitutionally protected liberty interest which accords him a legitimate claim of entitlement to a minimum security custody status. To resolve this issue, we must first determine whether the procedures and policies create such a protected liberty interest under the Fourteenth Amendment. "A liberty interest protectible under the Fourteenth Amendment may arise only when implicated by the

Constitution, or a state law or regulation." *Beard v. Livesay*, 798 F.2d 874, 875 (1986) *citing Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 868–69, 74 L.Ed.2d 675 (1983). Unlike persons who are free in society, persons who are lawfully incarcerated have only the narrowest range of protected liberty interests. *Hewitt*, 459 U.S. at 467, 103 S.Ct. at 869. It is well established that a prisoner has no inherent right to a particular security classification or to be housed in a particular institution. *Beard*, 798 F.2d at 876. In fact, so long as the conditions or the degree of confinement to which the prisoner is subjected do not exceed the sentence which was imposed and are not otherwise in violation of the Constitution, the due process clause of the Fourteenth Amendment does not subject an inmate's treatment by prison authorities to judicial oversight. *Hewitt*, 459 U.S. at 468, 103 S.Ct. at 869–70. Therefore, any liberty interest which may apply to appellant must be created by state law or regulation.

Actions of a state which create such a liberty interest were outlined by the United States Supreme Court as follows:

> [A] State creates a protected liberty interest by placing substantial limitations on official discretion. An inmate must show 'that particularized standards or criteria guide the State's decisionmakers.' [citations omitted] If the decisionmaker is not 'required to base its decisions on objective and defined criteria,' but instead 'can deny the requested relief for any constitutionally permissible reason or for no reason at all,' [citations omitted] the State has not created a constitutionally protected liberty interest.

*Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813, 823 (1983). It has also been held that prison officials may create liberty interests through official promulgations, policy statements, or regulations. *Walker v. Hughes*, 558 F.2d 1247, 1255 (6th Cir.1977).

> Where statutes or prison policy statements have limited prison officials' discretion by imposing a specific prerequisite to the forfeiture of benefits or favorable living conditions enjoyed by a prisoner, an expectation or entitlement has been created which can-

not be taken away without affording the prisoner certain due process rights. On the other hand, when prison officials have complete discretion in making a decision that will affect the inmate, no expectation or protected liberty interest has been created.

*Beard,* 798 F.2d at 877 (quoting *Bills v. Henderson,* 631 F.2d 1287, 1291 (6th Cir. 1990)).

In the case at bar, the Department of Corrections policy and procedures in effect at the relevant time mandated that the Reclassification Committee conduct a review of appellant's custody status using the Reclassification Custody Form provided to the Committee by the Department. The use of the reclassification document, as required, resulted in a score which strongly indicated that appellant's custody status should be changed from medium to minimum. However, the policy also provided that "[i]n some cases the Reclassification Custody Form may provide a custody score which is inappropriate. In those situations the Classification Committee may use an override to change the custody level of the inmate to a more appropriate level." *Section Six. Reclassification Summary.* The Reclassification Summary continues and under the heading *Instructions For The Use Of Overrides* states that "[e]ach of these overrides should only be used in situations where the Classification Committee believes that the initial custody level obtained from the point score is inappropriate."

Although the Reclassification Committee's actions are restricted in some ways, such as times for review and forms to be used, unlimited discretion is also allowed, specifically in the utilization of the override option. The Corrections Department's policies and procedures closely reflect those that were considered in *Kentucky Department of Corrections v. Thompson,* 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). While the regulations considered in *Thompson* differed in that they addressed a prisoners' receipt of visitors, the United States Supreme Court ruled in such a manner as to allow general application. The Court held that

[s]tate regulations containing a nonexhaustive list of categories of state prison visitors who 'may' be excluded from visiting prison inmates do not give the inmates, for purposes of the due process clause of the Federal Constitution's Fourteenth Amendment, a liberty interest in receiving visitors excluded under the regulations, despite the fact that the regulations provide 'substantive predicates' to govern prison decisionmakers in determining whether to allow visitation, because the regulations stop short of requiring that a particular result be reached upon a finding that the substantive predicates have been met; the regulations do not have the overall effect such that an inmate can reasonably form an objective expectation that a visit will necessarily be allowed absent the occurrence of one of the listed conditions for exclusion.

In this case, utilization of the override was in accordance with the procedures of the Corrections Department which state that "[t]he Central Office Classification Committee shall have the final authority to review, approve or alter classification actions." Upon this basis, we conclude that the policies and procedures of the Department of Corrections did not create a liberty interest and appellant therefore had no right to a minimum security classification.

■ Appellant alternatively contends that he was denied his constitutional right to equal protection of the laws when his reclassification was treated differently from other similarly situated prisoners when there was no rational basis for such treatment.

In considering a claim based upon equal protection, the Court must first determine the proper level of scrutiny to be applied. Courts have consistently held that the difference in treatment of incarcerated persons does not constitute a denial of equal protection of the laws, in the absence of a showing of suspect classification. In addition to this, "[u]nder traditional equal protection analysis, the government is only required to show a rational basis for its actions unless the actions involve a suspect class or a fundamental right." *Joost v. U.S. Parole Commission,* 647 F.Supp. 644, 646 (D.Kan.1986) (quoting *Clements v. Fashing,* 457 U.S. 957, 963, 102 S.Ct. 2836, 2843–44, 73 L.Ed.2d 508 (1982)).

Appellant has not asserted that he is a member of a suspect class, nor has it been claimed that a fundamental right is involved. Therefore, the Court need apply only the lowest level of scrutiny, or rational basis, when considering the actions of the State.

The actions of the prison official were taken in furtherance of their duty to protect the safety and security of the prison, the public, and appellant himself. This meets the modest judicial scrutiny standard whereby state action must be rationally related to a state interest. It does not fail on equal protection grounds.

For the reasons stated above, the Court of Appeals is affirmed.

STEPHENS, C.J., and COOPER, GRAVES, JOHNSTONE, LAMBERT, STUMBO and WINTERSHEIMER, JJ., concur.