Jerry SEYMOUR, Appellant,

v.

Kathleen D. COLEBANK, M.ED., NCPSYA; Dr. Robert Klinglesmith; and Kentucky Department of Corrections, Appellees.

No. 2004–CA–001942–MR.

Court of Appeals of Kentucky.

July 29, 2005.

Discretionary Review Denied by Supreme Court Jan. 11, 2006.

Jerry Seymour LaGrange, KY, for Appellant.

Michael D. Triplett Frankfort, KY, for Appellee.

Before HENRY, McANULTY, and MINTON, Judges.

*OPINION*

HENRY, Judge.

Jerry Seymour appeals from a July 28, 2004, order of the Oldham Circuit Court dismissing his petition for declaratory judgment. On review, we affirm.

Seymour is an inmate incarcerated for a sex offense at the Kentucky State Reformatory ("KSR") in LaGrange, Kentucky. Pursuant to Kentucky law, specifically KRS [1] 197.045(4), Seymour is only eligible for good time credit or parole once he completes the Sex Offender Treatment Program ("SOTP"). Upon arriving at KSR, Seymour enrolled in the eight-week Assessment and Orientation module of the SOTP, which is used to determine if an inmate is qualified to participate in and successfully complete the full program. Following completion of this module, Seymour's progress was characterized as follows:

> Upon completion of that 8–week module, you continued to deny major elements of your current offense, you refused to discuss any information related to the previous sexual offense for which you were charged and convicted, and you continued to blame the victims of your offenses for your current difficulties.

> It was your responsibility to move toward a position of ownership. The treatment team of the SOTP made every attempt to assist you, and continuously were met with your argumentative attitude, refusal to take responsibility, and continued denial of the harm you caused to the victims of your sexual crimes.

As a result of this evaluation, Seymour was found to be a "non-admitter" by the DOC and was denied admission to the full SOTP.

On April 19, 2004, Seymour filed a Petition for Declaration of Rights and for Temporary and Permanent Injunctive Relief with the Oldham Circuit Court against the Appellees asking for a ruling that he was entitled to attend the SOTP. The Appellees responded to this petition with a motion to dismiss. This motion was granted by the circuit court in an order entered on July 28, 2004. A subsequent CR 59.05 motion filed by Seymour was denied in an August 6, 2004, order. This appeal followed.

■ On appeal, Seymour raises a number of contentions. The first is that the DOC, because of personal bias and prejudice, refused to design an individualized treatment program for him, once he was denied acceptance to the full SOTP, that would help him overcome the "denial" issues that led to his not being admitted. Seymour argues that such a program is required by KRS 197.420(2)(b), which defines "treatment services" as including "individualized treatment plans."

KRS 197.400 to KRS 197.440 require that the DOC operate a "specialized treatment program for sexual offenders." To comply with these provisions, the DOC created the SOTP. A sex offender is considered "eligible" for admittance to the SOTP when the sentencing court, the DOC, or both, determine that the individual its a "mental, emotional, or behavioral disorder" absent active psychosis or mental retardation and "[i]s likely to benefit from the program." KRS 197.410(2)(a) and (b). KRS 197.420(1) grants the DOC "the sole authority and responsibility for establishing by regulation the design of the specialized program created in KRS 197.400 to 197.440."

---

1. Kentucky Revised Statutes.

The makeup of the SOTP is set forth in Kentucky Corrections Policies and Procedures ("CPP") 13.6, which is entitled "Sex Offender Treatment Program," and which describes as its purpose, "[t]o provide a specialized treatment program for sexual offenders." CPP 13.6(II). As noted above, prior to acceptance into the SOTP, a sex offender must participate in an eight-week Assessment and Orientation group so that his or her ability to successfully participate in and complete the SOTP can be evaluated. Those offenders deemed unlikely to benefit from the SOTP are not accepted into the full program. These offenders specifically include those persons defined as "non-admitters" under CPP 13.6(IV)(3), which encompasses people "who do[ ] not admit guilt or responsibility for committing the sexual offense." CPP 13.6(VI)(B)(2). All rejected non-admitters, without exception, are permitted to reapply for admission into the full SOTP after 180 days, and they may be accepted into the program "if [they are] willing to admit guilt or responsibility for [their] sexually assaultive offense." CPP 13.6(VI)(B)(3).

KRS 197.420(2) requires that the SOTP "shall include diagnostic and treatment services in both inpatient and outpatient environments." KRS 197.420(2)(b), which defines "treatment services" and is specifically relied upon by Seymour in his argument, reads as follows:

> "Treatment services" shall include individualized treatment plans to include individual, group, marital, and family counseling; psychoeducational courses to include sex education and victim personalization; and social skills development to include assertiveness training, stress management, and aggression management. . . .

Seymour contends that this definition's inclusion of "individualized treatment plans" somehow requires the DOC to offer him individual treatment beyond the eight-week Assessment and Orientation module that will assist him in being able to qualify for admission into the SOTP. We fail to see the merit in this contention.

■■■ "The interpretation of a statute is a matter of law." *Commonwealth v. Gaitherwright*, 70 S.W.3d 411, 413 (Ky. 2002). "As with any case involving statutory interpretation, our duty is to ascertain and give effect to the intent of the General Assembly. We are not at liberty to add or subtract from the legislative enactment nor discover meaning not reasonably ascertainable from the language used." *Beckham v. Board of Education*, 873 S.W.2d 575, 577 (Ky.1994), citing *Gateway Construction Co. v. Wallbaum*, 356 S.W.2d 247 (Ky.1962). Nothing within the statutory scheme setting forth the foundation for the SOTP makes any mention of the requirement espoused by Seymour, nor is there any language therein suggesting that the DOC is obligated in any way to assist a sex offender in becoming eligible for the program. Indeed, the language of KRS 197.410(2) and (2)(b) clearly indicates that the General Assembly anticipated that some sex offenders would not become eligible for the program, notably where a person is found unlikely to benefit from it, a determination left to the discretion of the sentencing court or the DOC. We believe that a situation such as the one presented here, where a sex offender refuses to accept responsibility for his actions, would certainly allow for a determination that said offender would be unlikely to benefit from the program. We also note, as mentioned above, that the General Assembly gave the DOC "the sole authority and responsibility for establishing by regulation the design" of the SOTP. KRS 197.420(1). Consequently, we cannot say that a failure to provide an individualized treatment plan to enable a sex offender to qualify for the SOTP is in derogation of this considerable

leeway afforded the DOC or of anything else set forth in KRS 197.400 to 197.440.

■ We have also not been presented with anything of substance in the record that would reflect any sort of "personal bias or prejudice" towards Seymour. His failure to be approved for admittance within the SOTP appears to have been based solely upon his failure to take responsibility for his actions, a determination that is consistent with CPP 13.6 and KRS 197.410(2). Accordingly, we must conclude that Seymour's contentions in this respect are without merit.

■ For similar reasons we must reject Seymour's argument that CPP 13.6(VI)(B)(2)—which reads: "A sex offender who does not admit guilt or responsibility for his sexually assaultive offense shall not be accepted in the Sex Offender Treatment Program, after the initial assessment phase"—is null, void, and unenforceable as it violates KRS 13A.120(2)(f) and (i). Those provisions provide that an administrative body shall not promulgate administrative regulations "[w]hen a statute sets forth a comprehensive scheme of regulation of the particular matter" or "[w]hich modify or vitiate a statute or its intent." For reasons noted above, we do not believe that CPP 13.6 modifies or vitiates KRS 197.400 to 197.440 or their intent; instead, it is fully consistent with those statutes. Moreover, the General Assembly, via KRS 197.420(1), explicitly instructed the DOC to set forth the design of the SOTP via regulation, which it did in CPP 13.6. Consequently, Seymour's argument in this respect is also without merit.

■ Seymour next argues that the Appellees have denied him his statutorily created liberty interests under the 5th and 14th Amendments to the United States Constitution and under Sections 2 and 11 of the Kentucky Constitution by wrongfully refusing to admit him into the SOTP. Seymour particularly points to the fact that, without completing the program, he cannot qualify for parole. Again, we find that this argument is without merit.

■ KRS 439.340(11) states that "[n]o eligible sexual offender within the meaning of KRS 197.400 to 197.440 shall be granted parole unless he has successfully completed the Sexual Offender Treatment Program." Seymour argues that by being prevented from participating in this program, he is being deprived of his right to parole. However, our courts have long held that parole is not a right, but is instead a privilege that is "a matter of grace or gift to persons deemed eligible." *Stewart v. Commonwealth,* 153 S.W.3d 789, 793 (Ky.2005), citing *Lynch v. Wingo,* 425 S.W.2d 573 (Ky.1968); *see also Pappas v. Kentucky Parole Board,* 156 S.W.3d 303, 305 (Ky.App.2004), citing *Belcher v. Kentucky Parole Board,* 917 S.W.2d 584, 587 (Ky.App.1996); KRS 439.340(1) ("The board *may* release on parole persons confined in any adult state penal or correctional institution of Kentucky or sentenced felons incarcerated in county jails eligible for parole.") (Emphasis added). Consequently, " '[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.... [T]he conviction, with all its procedural safeguards, has extinguished that liberty right.' " *Belcher,* 917 S.W.2d at 586, quoting *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979). Therefore, Seymour's failure to be admitted into the SOTP does not violate any protected liberty interest as to parole.

KRS 197.045 generally deals with credits for good conduct for persons convicted and sentenced to a state penal institution. Subsection (4) of this statute specifically

addresses what is required of a person convicted of a crime under KRS Chapter 510, KRS 530.020, KRS 530.064, KRS 531.310, or KRS 531.320 before he or she is entitled to any "good time" credits. It reads as follows:

(4) Until successful completion of the sex offender treatment program, a sex offender may earn good time. However, the good time shall not be credited to the sex offender's sentence. Upon the successful completion of the sex offender treatment program, as determined by the program director, the offender shall be eligible for all good time earned but not otherwise forfeited under administrative regulations promulgated by the Department of Corrections. After successful completion of the sex offender treatment program, a sex offender may continue to earn good time in the manner provided by administrative regulations promulgated by the Department of Corrections. Any sex offender, as defined in KRS 197.410, who has not successfully completed the sex offender treatment program as determined by the program director shall not be entitled to the benefit of any credit on his sentence. A sex offender who does not complete the sex offender treatment program for any reason shall serve his entire sentence without benefit of good time, parole, or other form of early release. The provisions of this section shall not apply to any sex offender convicted before July 15, 1998, or to any mentally retarded sex offender.

The case law is clear that Seymour has no vested right or reasonable entitlement to good time credit, whether it be the non-educational good time credit set forth by KRS 197.045(1) or the meritorious good time credit set forth by KRS 197.045(3). Rather, it is a privilege that must be earned. *Martin v. Chandler*, 122 S.W.3d 540, 542 (Ky.2003); *see also Fowler v. Black*, 364 S.W.2d 164, 164–65 (Ky.1963); *Anderson v. Parker*, 964 S.W.2d 809, 810 (Ky.App.1997).[2] Moreover, our courts have made clear that the "loss of the mere opportunity to earn good-time credit does not constitute a cognizable liberty interest." *Marksberry v. Chandler*, 126 S.W.3d 747, 753 (Ky.App.2003), citing *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir.1995); *Abed v. Armstrong*, 209 F.3d 63, 67 (2d Cir.2000). Our Supreme Court has further held that "so long as the conditions or the degree of confinement to which the prisoner is subjected do not exceed the sentence which was imposed and are not otherwise in violation of the Constitution, the due process clause of the Fourteenth Amendment does not subject an inmate's treatment by prison authorities to judicial oversight." *Mahoney v. Carter*, 938 S.W.2d 575, 576 (Ky.1997), citing *Hewitt v. Helms*, 459 U.S. 460, 468, 103 S.Ct. 864, 869–70, 74 L.Ed.2d 675 (1983). We also note that a prisoner is not even entitled to a hearing on the denial or forfeiture of good time credits. *McGuffin v. Cowan*, 505 S.W.2d 773, 773 (Ky.1974). Accordingly, we fail to see how due process concerns are implicated here, and we must consequently reject Seymour's contention.[3]

**2.** The only exception to this rule is the mandatory sixty-day educational good time credit set forth in KRS 197.045, which the Department of Corrections "shall provide" when a prisoner successfully receives a GED, high school diploma, two or four-year college degree, certification in applied sciences, or a technical education diploma as provided and defined by the Department. KRS 197.045(1);

*Martin*, 122 S.W.3d at 543 & 543 n. 8. However, a denial of this type of credit has not been put into issue here by Seymour, and there is nothing within the record to suggest that he is entitled to this sort of credit. Accordingly, we will not consider the applicability of any "right" to said credit here.

**3.** Seymour adamantly insists that he is not asserting an equal protection claim even

Seymour finally offers a general contention that the appellees' refusal to allow him admittance into the SOTP constitutes cruel and unusual punishment prohibited by the 8th Amendment to the United States Constitution and Section 17 of the Kentucky Constitution because it has effectively prevented him from qualifying for parole or for good time credit. Given the law and facts previously set forth, however, we cannot fathom how the DOC's refusal to accept Seymour into the SOTP would constitute cruel and unusual punishment, nor has he directed us to any case law of substance that would support his position. The DOC's refusal to admit Seymour into the SOTP does not add additional years to the sentence that he is required to serve pursuant to his conviction. Moreover, he is allowed to reapply for admission to the program 180 days after rejection. Accordingly, we must reject Seymour's contention as being utterly without merit.

The judgment of the Oldham Circuit Court is affirmed.

ALL CONCUR.

though some of the language in his brief could be construed as relating to such a claim. Accordingly, we will not consider the merits of an equal protection argument here.