RENDERED:  APRIL 4, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1388-MR

TINA M. SIMMONS                                                                 APPELLANT

APPEAL FROM BATH CIRCUIT COURT
v.          HONORABLE WILLIAM EVANS LANE, JUDGE
ACTION NO. 22-CR-00057

COMMONWEALTH OF KENTUCKY                                       APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, A. JONES, AND LAMBERT, JUDGES.

ACREE, JUDGE:  Appellant Tina Simmons appeals her sentence from the Bath

Circuit Court, alleging errors during the sentencing phase.  We affirm.

## BACKGROUND

In September 2022, a Bath County grand jury indicted Appellant Tina

Simmons on charges of first-degree trafficking in a controlled substance and illegal

possession of drug paraphernalia.  Roughly one year later, on October 30, 2023,

Simmons entered an open plea of guilty to the charges. A jury was empaneled for the sentencing determination.

Kentucky State Police Trooper Ben Allen testified for the Commonwealth as follows. On May 16, 2022, law enforcement was looking for Michael Simmons, Appellant's husband, for his suspected involvement in the theft of catalytic converters. After locating a vehicle parked at Heather Turner's house matching a given description of Appellant's vehicle, police stopped to see if Michael was present. Heather answered the door and informed officers that Michael was not present. In so doing, police saw Appellant asleep on the couch, clutching an eyeglass case.

Police woke Appellant to ask for her permission to search the suspect vehicle. She consented. Their search revealed drug paraphernalia, but nothing was believed to be related to the theft investigation.

Officers returned to the house to speak with Appellant and noticed she no longer had the eyeglass case with her on the couch. Believing the eyeglass case to be holding drugs, police asked Appellant to produce it. She handed the case to the officers. It contained approximately 18 grams of suspected methamphetamine, baggies wrapped in rubber bands, a hypodermic needle, a spoon, and other drug paraphernalia. Appellant was arrested and charged.

At sentencing, the jury returned a recommendation of ten years on the trafficking charge and twelve months on the paraphernalia charge. Appellant now appeals her sentence as a matter of right.

## I. Officer Akers' testimony was not so misleading as to be fundamentally unfair.

Appellant argues that inaccurate information presented during the sentencing phase resulted in manifest injustice. She concedes this issue is unpreserved; we thus review for palpable error pursuant to RCr[1] 10.26 ("A palpable error which affects the substantial rights of a party may be considered by . . . an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.").

The Commonwealth called Paul Akers to testify as a Probation and Parole Officer. When asked what the parole eligibility threshold is for Appellant's charges, Akers responded "between five and ten," meaning "for five years would be one year and for ten years would be two years." (Video Record (VR) 10/30/23, 10:24:05). The Commonwealth clarified this to mean that once twenty percent of the sentence has been served, the individual is "potentially eligible for parole." (VR 10/30/23, 10:24:20).

---

[1] Kentucky Rules of Criminal Procedure.

-3-

Akers responded as follows when asked what other factors can impact

parole eligibility:

Akers: They can get meritorious good time, which could depend on their behavior or educational things, or different programs. It could be up to – it says not to exceed more than seven days a month – a calendar month.

Commonwealth: Okay, so, based on your experience, does an individual who is sentenced to a certain term of years, do they serve that full amount of time? If a person is supposed to be sentenced to five years, would they likely serve five years exactly?

Akers: Not if they're acting like they're supposed to. They get their good time, and they're parole eligible at twenty percent. And it depends on the charge; I would imagine something of this nature, she would make parole the first time.

Commonwealth: So, based on what you're testifying to today, is that, say the jury was to give her ten years, she'd only be looking at certain two of those years before she got parole?

Akers: That's what my opinion would be.

Commonwealth: And, in fact, with the credits that she likely could get, that would be even less than two years before she was looking at parole?

Akers: Yes.

| | |
|---|---|
| Commonwealth: | It could be as low as fourteen months? |
| Akers: | Yes. |

(VR 10/30/23, 10:24:30). On cross-examination, Akers further elaborated on his experience regarding parole:

| | |
|---|---|
| Counsel: | If she were to receive the minimum five-year sentence, is there any way she could get out sooner than a year at twenty percent of that? Is a year the soonest she would get out as far as parole is concerned? |
| Akers: | The way I understand, you can get "good time." |
| | . . . . |
| Counsel: | When you're saying the "good time" credit, is that what you hear people talk about, that a state year is like seven months and twenty-one days? |
| Akers: | I've heard that. |
| Counsel: | If she were to receive, let's say, a ten-year sentence, she at minimum would be looking at two years to serve before she would get parole, is that correct? |
| Akers: | I thought the good time applied. But I don't do the DOC part of the prison. |

(VR 10/30/23, 10:26:55). This testimony, Appellant argues, was "so misleading as to be fundamentally unfair." (Appellant's Brief at 6). She further says "this Court

must now speculate how much this error attributed to [her] lengthy sentence." (Appellant's Br. at 6-7).  We are unpersuaded.

We first note the Commonwealth is statutorily authorized to offer testimony at sentencing regarding minimum parole eligibility.  KRS[2] 532.055(2)(a)1.  Appellant provides caselaw regarding the individualized nature of parole, which, as she correctly argues, is never guaranteed.  *See Young v. Commonwealth*, 129 S.W.3d 343, 345 (Ky. 2004); *Seymour v. Colebank*, 179 S.W.3d 886, 890 (Ky. App. 2005).  Beyond this, however, Appellant does not direct us to any authority helpful to our analysis of whether such testimony constitutes manifest injustice warranting reversal.  We cannot say any of Akers' testimony constituted an error, much less palpable error.

Akers never testified that Appellant was guaranteed parole.  He provided factual testimony – of which Appellant does not contest the accuracy – regarding the amount of time served that would be required for Appellant's parole eligibility.  Moreover, he qualified his testimony by saying it was merely his opinion and that he is not involved with the DOC part of the prison.  Although Appellant correctly notes there was no guarantee she would ever be granted parole, this contention is not at issue since Akers never stated as much.  We cannot reverse on these grounds.

---

[2] Kentucky Revised Statutes.

## II.    The Commonwealth did not commit prosecutorial misconduct.

Simmons also raises the issue of prosecutorial misconduct based on several comments by the Commonwealth regarding her irreconcilable guilty plea and testimony that she was not in possession of drugs, which the Commonwealth referred to as perjury.

When prosecutorial misconduct is reviewed for palpable error, it is to be reversed only if the alleged misconduct was flagrant. *Dickerson v. Commonwealth*, 485 S.W.3d 310, 329 (Ky. 2016). Misconduct is considered "flagrant" when it renders the trial fundamentally unfair. *Id*. (internal quotation marks omitted). Courts consider four factors to decide whether the purported misconduct was flagrant: "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused." *Id*.

Appellant testified at sentencing. She contradictorily stated the drugs were not hers, after freely entering a guilty plea prior to sentencing. Specifically, her testimony was that "there was no dope with me, I didn't do it," and "there was no dope there before the law got there." (VR 10/30/2023, 10:31:00). Purportedly seeking to determine which story was the truth – her guilty plea or her subsequent testimony – the Commonwealth asked, "Ms. Simmons, I am attempting to figure

out for which thing you're guilty of perjury today. Did you stand before this judge earlier today and plead guilty?" (VR 10/30/2023, 10:38:09). Appellant explained that although the drugs were on her, she was not trafficking; she then stated that her guilty plea was a lie "because actually [she is] innocent of it." (VR 10/30/2023, 10:38:56).

The right to cross-examine a witness to impeach their credibility or to show motive is well established as fundamental to a fair trial. *Williams v. Commonwealth*, 569 S.W.2d 139, 145 (Ky. 1978). Impeaching credibility is precisely what the Commonwealth did. We cannot find any unfairness or flagrant misconduct in the Commonwealth engaging in this fundamental principle of cross-examination.

Appellant also takes issue with the Commonwealth discussing her lack of candor in its closing argument. Similarly, however, the Kentucky Supreme Court has "repeatedly held that a prosecutor is permitted wide latitude during closing arguments and is entitled to draw reasonable inferences from the evidence[.]" *Commonwealth v. Mitchell*, 165 S.W.3d 129, 132 (Ky. 2005). As it follows, a prosecutor is permitted to "make reasonable comment upon the evidence and make a reasonable argument in response to matters brought up by the defendant." *Driver v. Commonwealth*, 361 S.W.3d 877, 889 (Ky. 2012) (quoting *Childers v. Commonwealth*, 332 S.W.3d 64, 73 (Ky. 2010)). The Commonwealth

here directly commented upon the sworn testimony given by Appellant and drew reasonable inferences from her plea of guilt. Although she argues the statements "were intended to mislead the jury," we cannot agree. It appears clear to us that the statements were factually accurate and presented in such a way to impeach her credibility. Presenting impeachment evidence is not, on its face, prosecutorial misconduct. It was reasonable for the Commonwealth to infer that one of the two statements were false since they were mutually exclusive. Appellant cannot cry misconduct simply because her testimony was unfavorably contradictory. These comments and inferences plainly do not amount to prosecutorial misconduct.

## **CONCLUSION**

Finding no error, we affirm the judgment and sentence of the Bath County Circuit Court.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Kayla D. Deathrage<br>Frankfort, Kentucky | Russell Coleman<br>Attorney General of Kentucky |
| | Ken W. Riggs<br>Assistant Attorney General<br>Frankfort, Kentucky |