Jack SMITH, Appellant,

v.

Michael O'DEA, Appellee.

No. 95–CA–2555–MR.

Court of Appeals of Kentucky.

Feb. 7, 1997.

Jack Smith, West Liberty, pro se.

Boyce A. Crocker, Department of Corrections, Frankfort, for Appellee.

Before DYCHE, GUIDUGLI and SCHRODER, JJ.

## OPINION

PER CURIAM:

Jack Smith, an inmate at the Eastern Kentucky Correctional Complex (EKCC), appeals, pro se, from two orders of Morgan Circuit Court, one dismissing his petition for a declaration of rights and another denying his motion for findings of fact and conclusions of law. The orders were entered August 1, 1995, and September 13, 1995, respectively. Smith petitioned for a declaration of rights pursuant to KRS 418.040 and moved for findings and conclusions pursuant to CR 52.01. He claims to have been arbitrarily subjected to prison disciplinary sanctions in violation of his rights under the due process provisions of both the United States and Kentucky Constitutions. We affirm.

In December, 1994, Smith's daughters Christina and Kindra came to EKCC to visit Smith. They were accompanied by Christina's children and one of her friends. In the course of a pre-admission search, prison personnel discovered two small bags of marijuana concealed in the clothing of one of the children. Solely on the basis of these facts, Smith was charged with having violated institutional rules against complicity in the attempted introduction of contraband to the prison. At his hearing before the adjustment committee, Smith denied having solicited the marijuana or even knowing of his daughters' plan to visit. Nevertheless, the adjustment committee found him guilty as charged. He was assigned to a period of disciplinary segregation and lost some of his good behavior credit. Smith appealed to the warden and tendered affidavits from Christina and others corroborating his denials. The warden ordered further review, but ultimately affirmed the committee's decision.

Smith then sought judicial review. Arguing that the committee had before it insufficient evidence of his involvement in the alleged smuggling attempt, he claimed that the decision to sanction him was arbitrary, a violation of both his federal and Kentucky constitutional rights to procedural due process. The circuit court summarily denied Smith's petition [1] and this timely appeal followed.

The general formula Kentucky courts at all levels employ to determine whether summary judgment is proper is to ask whether there are genuine issues of material fact, and, if not, whether the movant is entitled to judgment as a matter of law. Whenever it is reasonable to do so, ambiguities in the record must be construed in favor of the non-moving party. CR 56 and *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476 (1991). Like other general provisions of the law, this one is to be applied with sensitivity to particular circumstances. Appellant's petition arises in a context that colors somewhat the application of the general summary judgment standard.

A petition for declaratory judgment pursuant to KRS 418.040 has become the vehicle, whenever Habeas Corpus proceedings are inappropriate, whereby inmates may seek review of their disputes with the Corrections Department. *Polsgrove v. Kentucky Bureau of Corrections*, Ky., 559 S.W.2d 736 (1977); *Graham v. O'Dea*, Ky.App., 876 S.W.2d 621 (1994). While technically original actions, these inmate petitions share many of the aspects of appeals. They invoke the circuit court's authority to act as a court of review. The court seeks not to form its own judgment, but, with due deference, to ensure that the agency's judgment comports with the legal restrictions applicable to it. *American Beauty Homes Corp. v. Louisville & Jefferson County Planning and Zoning Comm'n*, Ky., 379 S.W.2d 450 (1964).

---

1. More precisely, the circuit court granted the appellee's motion to dismiss Smith's petition for failure to articulate a genuine controversy as required under KRS 418.040. Similar to motions to dismiss for lack of controversy, CR 12 motions to dismiss for failure to state a claim, and CR 56 motions for summary judgment are typical Corrections Department responses to inmate declaratory judgment petitions. For reasons appearing in the text below, we believe that a motion for summary judgment provides, in most cases, the most appropriate procedure and standards for addressing these petitions. We have tailored our discussion accordingly.

" 'The focal point for [this] judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.' " *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985) (quoting *Camp v. Pitts,* 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973)). These petitions thus present circumstances in which the need for independent judicial factfinding is greatly reduced. The circuit court's fact-finding capacity is required only if the administrative record does not permit meaningful review. Even then, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Florida Power, supra,* 470 U.S. at 744, 105 S.Ct. at 1607; *see also American Beauty Homes, supra* (constitutional provisions for the separation of powers restrict the court's authority to rely upon its own rather than the agency's factual determinations).

Where, as here, principles of administrative law and appellate procedure bear upon the court's decision, the usual summary judgment analysis must be qualified. The problem is to reconcile the requirement under the general summary judgment standard to view as favorably to the non-moving party as is reasonably possible the facts and any inferences drawn therefrom, with a reviewing court's duty to acknowledge an agency's discretionary authority, its expertise, and its superior access to evidence. In these circumstances we believe summary judgment for the Corrections Department is proper if and only if the inmate's petition and any supporting materials, construed in light of the entire agency record (including, if submitted, administrators' affidavits describing the context of their acts or decisions), does not raise specific, genuine issues of material fact sufficient to overcome the presumption of agency propriety, and the Department is entitled to judgment as a matter of law. The court must be sensitive to the possibility of prison abuses and not dismiss legitimate petitions merely because of unskilled presentations. *Jackson v. Cain,* 864 F.2d 1235 (5th Cir.1989). However, it must also be free to respond expeditiously to meritless petitions. By requiring inmates to plead with a fairly high degree of factual specificity and by reading their allegations in light of the full agency record, courts will be better able to perform both aspects of this task.

Applying this standard, we agree with the circuit court that Smith's allegations raise no issue of material fact and do not entitle him to the relief he seeks.

First, we disagree with Smith's claim that the court erred by failing to enter independent findings of fact. Its reliance on the agency's record was not only proper but required in its role as reviewer of the administrative decision. *Florida Power, supra; American Beauty Homes, supra.* Also, under CR 56.01, which provides for summary judgments in declaratory judgment actions, legal conclusions need not accompany summary affirmations of administrative adjudications. *Wilson v. Southward Inv. Co. # 1,* Ky.App., 675 S.W.2d 10 (1984).

We also reject Smith's substantive claim. He argues, first, that the circuit court is apt to have employed an incorrect standard of review. Federal courts review prison disciplinary committees' findings of fact by asking whether "some evidence" appearing in the record supports the finding. The United States Supreme Court has held that this minimal judicial scrutiny comports with federal due process provisions. *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). Smith contends that the "some evidence" standard of review, which is the standard the Commonwealth recommended to the circuit court, is inappropriate under Section 2 of the Kentucky Constitution. Relying on *Commonwealth Transportation Cabinet v. Cornell,* Ky.App., 796 S.W.2d 591 (1990), he argues that Section 2, which prohibits arbitrary state action, requires our courts to apply a "substantial evidence" standard of review to all administrative findings of fact, including those of prison disciplinary tribunals. He insists that this is a stricter standard than that approved in the federal courts and argues that had it been applied in his case the decision to punish him would not have been upheld.

Smith also maintains that even if the "some evidence" standard of review applies, the circuit court erred, for no reliable evidence supports the adjustment committee's finding. Aside from his relationship to his visitors, he argues, there was no evidence showing that he knew of, much less encouraged, an attempt to smuggle marijuana into the prison. He insists that punishing him for his relationships or for having visitors is tantamount to punishing him for the wrongdoing of another. We disagree with both of these arguments.

Without question the operation of prisons is one of the most difficult as well as one of the most important of the state's administrative functions. Prisons are a vital part of the government's effort to preserve social order and domestic tranquility. They provide this fundamental benefit, however, only at the cost of becoming places where the risk of disorder and violence is greatly heightened. The United States Supreme Court has recognized the unique role of prisons among administrative institutions in a series of cases construing the procedural due process rights of prison inmates. In *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Court ruled that, in prison disciplinary proceedings where a prisoner's good behavior credit is at stake, the Due Process Clause of the United States Constitution is implicated, but the process due is no more than notice of the charges, a reasonable opportunity to be heard, and a brief written finding suitable for judicial review. The Court approved these minimal procedures after balancing the prison administration's profound interest in maintaining order against the inmate's relatively minor interest in avoiding a portion of his sentence.

Since *Wolff*, the Court has reiterated and confirmed this estimate of the disparate interests at stake in the context of ordinary prison management and its significance for due process analysis. Among these cases are two particularly pertinent herein: *MCI v. Hill*, *supra*, the case Smith urges us not to follow, and *Sandin v. Conner*, 515 U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In these cases the Court held that, in light of the exceptional difficulties confronting prison administrators, a highly deferential standard of judicial review is constitutionally appropriate with respect to both the factfinding that underlies prison disciplinary decisions and the construction of prison regulations.

■ We think the apparent attempt by Smith's visitors to smuggle marijuana into the prison is sufficient evidence under the "some evidence" standard of review enunciated in *MCI v. Hill*, *supra*, to uphold the decision to sanction Smith. Although the evidence of Smith's involvement in the attempted smuggling is not compelling, the inference is reasonable that he, at some time, communicated to his daughters a willingness to receive such contraband. There is thus some evidence in the record to support the committee's decision, and so, under the federal standard of review, Smith's sanction should be upheld.

We are thus confronted with Smith's contention that Section 2 of the Kentucky Constitution does not permit the degree of judicial deference to prison administrators that the United States Supreme Court has found appropriate under federal law.

■ Section 2 of our Constitution provides that the Commonwealth shall be free of arbitrary state action. With respect to adjudications, whether judicial or administrative, this guarantee is generally understood as a due process provision whereby Kentucky citizens may be assured of fundamentally fair and unbiased procedures. *Trimble Fiscal Court v. Snyder*, Ky.App., 866 S.W.2d 124 (1993). *See also* Dyche, *Section 2 of the Kentucky Constitution—Where Did It Come From and What Does It Mean?*, 18 N. Ky. L.Rev. 503 (Fall 1990) (discussing at 517 *et seq.* Section 2's guarantee of procedural fairness and equal protection of the laws).

■ Under Kentucky law no less than under federal law, the concept of procedural due process is flexible. Due Process concerns will not be allowed to restrict the State's reasonable exercise of its police power. Rather, the process due in any given context will depend on the interests at stake and the costs of safeguarding the accuracy of the tribunal's factual and legal determinations. *Commonwealth v. Raines*, Ky., 847

S.W.2d 724 (1993) (citing *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)); *Belcher v. Kentucky Parole Board*, Ky.App., 917 S.W.2d 584 (1996) (holding that due process principles do not require judicial scrutiny of Parole Board decisions); *Kentucky Central Life Ins. Co. v. Stephens*, Ky., 897 S.W.2d 583 (1995) (noting at 590, "Procedural due process is not a static concept, but calls for such procedural protections as the particular situation may demand."); *Shaw v. Seward*, Ky.App., 689 S.W.2d 37 (1985) (noting that due process requires different standards of proof in different fact-finding contexts). Administrative tribunals in particular have been permitted to fashion procedures appropriate to their functions. *Bourbon County Board of Adj. v. Currans*, Ky.App., 873 S.W.2d 836 (1994).

Nevertheless, as Smith notes, in applying the due process guarantee of our Constitution to administrative adjudications, our courts traditionally have deemed arbitrary any factual determinations not supported by "substantial evidence." *American Beauty Homes Corp. v. Louisville & Jefferson County Planning and Zoning Comm'n.*, Ky., 379 S.W.2d 450 (1964). Moreover, we agree with Smith that the "some evidence" standard of review articulated in *MCI v. Hill* is a less searching standard than "substantial evidence."[2] We must thus decide whether the traditional standard of review is itself mandated by our Constitution or whether in certain circumstances a lesser standard might serve the constitutional purpose. In light of the due process principles referred to above, we believe in these circumstances a lesser standard is appropriate.

We note on the one hand the prison administration's compelling interest in order and in authority as a means to order. In a prison, where a state of emergency and high alert is unrelieved, any defect in the administration's authority poses a risk of disruption. On the other hand, inmate declaratory judgment petitions, like the one before us, typically present uncomplicated factual situations and concern relatively minor interests (in slightly reduced sentences, for example, or marginally mitigated conditions of confinement). In light of these disparate interests and the circumstances in which they typically arise, we are persuaded that the "some evidence" standard of review provides courts with a sufficient check upon adjustment committee fact-finding. Section 2 of our Constitution is not compromised by this standard of review nor, in general, is it compromised by judicial deference to the judgments of prison disciplinary committees and administrators in accord with that recognized as appropriate under federal law in *Wolff*, *MCI v. Hill*, and *Conner*. In reaching this result, we stress that our holding in no way relieves courts of their responsibility to be vigilant in detecting and steadfast in remedying genuine prison abuses.

For these reasons, we affirm the order of Morgan Circuit Court.

All concur.

---

**2.** Of course, less scrutiny does not mean no scrutiny. Courts must uphold the constitutional guarantee against arbitrariness. The Supreme Court has found, however, that they may do so while also recognizing their unfitness to interfere in ordinary prison administration. *See, MCI v. Hill*, 472 U.S. at 455, 105 S.Ct. at 2774:

Requiring a modicum of evidence to support a decision to revoke good time credits will help to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens.