Gardner YATES, Appellant,

v.

Douglas FLETCHER, Warden, Appellee.

No. 2002–CA–000893–MR.

Court of Appeals of Kentucky.

Oct. 31, 2003.

Gardner Yates, Lexington, KY, pro se. No brief for appellee.

Before BAKER, COMBS, and SCHRODER, Judges.

## OPINION

SCHRODER, Judge.

Gardner Yates (Yates) appeals the dismissal of his declaratory judgment action which requested a review of a prison disciplinary action. The Department of Corrections (the real party in interest) did not file a brief, relying instead on the administrative record below and the motion to dismiss filed in the circuit court. Having reviewed the entire record before the Adjustment Committee, we affirm.

Yates was an inmate at the Bell County Forestry Camp on November 21, 2001. Yates was subject to two shakedowns which resulted in two disciplinary reports against him. In the first shakedown, correctional officers searched the bed area. Yates was not present, but in his laundry bag, located under his bed, was a four-pound can of tuna that was stolen from the kitchen. Yates received a disciplinary write-up for possession of stolen state property. Later that day, loose sugar in a creamer container was discovered in Yates's bed area. Yates received a disciplinary write-up for obtaining goods under false pretenses.

A hearing by the Adjustment Committee convened on November 26, 2001, on both charges. Yates was found guilty of both charges and assessed forfeiture or the loss of 60 days good-time on each charge. Yates was subsequently reclassified and transferred from the Bell County Forestry Camp to the Northpoint Training Center. Yates's appeal to the Warden was unsuccessful. Yates filed his declaration of rights action (KRS 418.040) in the Bell Circuit Court to contest the disciplinary actions taken against him. The circuit court granted the Department of Correction's motion to dismiss with a one sentence finding, "[p]etitioner was afforded all the due process to which he was entitled." An appeal to our Court followed.

■ On appeal, Yates's first contention is that he was deprived of due process when he was deprived of the 24–hour notice requirement to prepare his defense. Exhibit 1, the disciplinary report on the can of tuna, was given to Yates on November 26, 2001, at 12:38 p.m., and his hearing commenced at 1:52 p.m. the same day. There is a line an inmate may check on this form for waiving the 24–hour notice before a hearing is commenced. Yates checked the waiver of the 24–hour notice. Exhibit 2, the disciplinary report on the sugar in the creamer container, was given to Yates on November 26, 2001, at 12:30 p.m., which like Exhibit 1, was about an hour prior to the hearing before the Adjustment Committee. Yates also checked the line on Exhibit 2 that he waived the 24–hour notice. Yates now contends that he did not waive the notice requirement

but thought he was signing a receipt for a notice of the charges against him, and even if he did waive the 24–hour notice, that, as a matter of law, the minimum notice requirement cannot be waived. In *Wolff v. McDonnell,* 418 U.S. 539, 564, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974), our United States Supreme Court held that at a minimum, a prisoner was entitled to at least a 24–hour written notice of the charges against him before a hearing can be held by the Adjustment Committee, in order for the inmate to marshal the facts and prepare a defense. The forms are clear that Yates checked off waiving his notice. The issue is whether he could waive the minimum 24–hour notice. Although there are no Kentucky state court cases directly addressing this issue, there is a Kentucky case and a federal case which both involved a waiver of the 24–hour notice. In *Gilhaus v. Wilson,* Ky. App., 734 S.W.2d 808, 809 (1987), the Court noted that the inmate had waived the 24–hour notice period, although this was not raised as an issue in the case. *Kendrick v. Bland,* 541 F.Supp. 21 (W.D.Ky.1981), involved a prisoner's suit against the prison officials at the Kentucky State Penitentiary. In *Kendrick,* the Court was dealing with a bad situation in the Kentucky State Penitentiary which not only involved the "bricks and mortar of the prison," but "the attitudes of prisoners and corrections personnel." *Id.* at 22. Some of the problems were addressed in a "Consent Decree" which, in part, guaranteed the prisoner's due process rights. Paragraph 6 of the Consent Decree was titled "Due Process" and covered "disciplinary procedures," and stated the following procedures must be followed:

1) A copy of the incident report, and a notice of the charges, shall be given to the prisoner at least twenty-four (24) hours prior to a hearing on the matter *unless such notice is waived.* At the same time the copy of the disciplinary report is given to the inmate, the inmate shall be advised of his right to consult with inmate counsel of his choice at least twenty-four hours prior to the hearing. In addition, the inmate shall be advised of his right to waive the hearing and plead guilty to the charges.

*Id.* at 31–32 (emphasis added). Just as the prisoner has a right to the 24–hour notice, he also has the right to waive this right. In both disciplinary charges, Yates waived his 24–hour notice and we agree that due process allows him to waive said minimum notice.

Yates's second argument concerning the can of tuna is that due process requires a good faith investigation as to how the can got in his laundry bag when he claims he did not put it there. Yates includes in this argument that he did not have "possession" of the tuna as he was not present when the shakedown occurred, and that "others" had access to his laundry bag which was in an open wing.

■ Possession can be actual (physically holding the can in one's hands) *or* constructive. Constructive possession is when a person has control over something (like a car, an apartment, or a box) and the tuna is found inside. Because that person is in charge of that object, the law says the person has "possession" of what is inside, or "constructive possession." Yates cites KRS 500.080(14) for the requirement of actual possession. The statute reads: " 'Possession' means to have actual physical possession or otherwise to exercise actual dominion or control over a tangible object." The statute includes both actual *and* constructive possession. Therefore a laundry bag that belongs to Yates is considered under his control (even though it may be stored in a common area) and is in Yates's possession.

■ The second part of Yates's second argument is that even though the tuna

was found in his laundry bag, it could have been planted so he should not have been found guilty. This is a reasonable argument and if we were deciding Yates's guilt or innocence, we might very well decide he is innocent. However, that was the job of the Adjustment Committee. The courts only *review* the decisions of the Adjustment Committee and prison officials are afforded broad *discretion.* This Court must affirm if there is "some evidence" supporting the charge. *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). *See also Smith v. O'Dea,* Ky.App., 939 S.W.2d 353 (1997), wherein Kentucky adopts the federal standard. Because the tuna was found in Yates's laundry bag, we must affirm that part of the Adjustment Committee's finding.

■ As to the second disciplinary report, concerning the sugar in the creamer container, Yates admitted it was there and that he knew it was sugar in the creamer container. An admission is "some evidence" sufficient to uphold the decision of the Adjustment Committee. *O'Dea,* 939 S.W.2d at 356–357.

■ Yates's third argument is that the Adjustment Committee's findings of guilt were arbitrary. Yates argues the *Hill* case above and the issue of "possession" of the tuna. We believe these issues were adequately addressed above. Also Yates contends the Adjustment Committee had to prepare written findings, citing *Hill* and *O'Dea.* The "Kentucky Department of Corrections Disciplinary Report Form" on each of the two incidents is included in the record before this Court. Both are signed by the members of the Adjustment Committee. Each report includes two parts— "Disciplinary Report Form PART I— Write Up and Investigation," which con-

tains the specific charge and the facts to support the charge, and "Disciplinary Report Form PART II—Hearing/Appeal," which incorporates by reference PART I, and includes the Adjustment Committee's findings. The Adjustment Committee's findings as to the tuna were "[t]he Committee Believes The Officer's Report To Be Correct. . . ." This incorporates the facts by reference and becomes the written findings of the Adjustment Committee. This procedure (not rewriting the findings) satisfies the requirements of *Wolff* that there be written findings as to the evidence relied on and the reasons for the disciplinary action. *Wolff,* 418 U.S. at 564, 94 S.Ct. 2963. *Wolff* explained that the requirement for written findings protects the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding and helps to insure that administrators act fairly. *Id.* at 565, 94 S.Ct. 2963; *Gilhaus v. Wilson,* Ky.App., 734 S.W.2d 808, 810 (1987). The findings may be brief. *Gilhaus,* 734 S.W.2d at 810. In *Gilhaus,* our Court dealt with an inmate's claim that the committee did not make adequate findings. The findings included the incident report form printed on the same page and the Court held this was adequate. *Id.* In Yates's case, we believe the findings were adequate. The same reasoning applies to the charge of the sugar in the creamer container to which Yates pled guilty. The findings are incorporated by reference on Part II of the Disciplinary Report Form.

For the foregoing reasons, we affirm the judgment of the Bell Circuit Court which affirmed the Adjustment Committee.

ALL CONCUR.