RENDERED: JANUARY 28, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1154-MR

ELIZABETH TURPIN                                                          APPELLANT

APPEAL FROM SHELBY CIRCUIT COURT
v.        HONORABLE CHARLES R. HICKMAN, JUDGE
ACTION NO. 19-CI-00289

VANESSA KENNEDY, WARDEN,
KENTUCKY CORRECTIONAL
INSTITUTION FOR WOMEN                                                      APPELLEE

AND

NO. 2020-CA-1416-MR

ELIZABETH TURPIN                                                          APPELLANT

APPEAL FROM SHELBY CIRCUIT COURT
v.        HONORABLE CHARLES R. HICKMAN, JUDGE
ACTION NO. 18-CI-00646

JANET CONOVER, WARDEN,
KENTUCKY CORRECTIONAL
INSTITUTION FOR WOMEN                                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, CETRULO, AND JONES, JUDGES.

CALDWELL, JUDGE:  Elizabeth Turpin, an inmate at the Kentucky Correctional Institution for Women serving a sentence of life imprisonment without the possibility of parole for twenty-five (25) years, has appealed from two dismissals of petitions for declarations of rights she filed in the Shelby Circuit Court following institutional disciplinary procedures.  Having reviewed the record and the briefs of the parties, we affirm.

**FACTS**

**2020-CA-1154-MR**

On March 31, 2018, inmate Kirstie Smith (Smith), who was housed in a separate housing unit, walked into Elizabeth Turpin (Turpin)'s cell in the Ridgeview Unit.  Several minutes later, both inmates left Turpin's cell and entered a cell belonging to two other inmates, both of whom left their own cell after Turpin and Smith entered it.  Turpin and Smith remained in the cell that belonged to neither of them for approximately thirty minutes, at which time Turpin left the cell and walked into the dayroom temporarily, before returning to the cell.  A few minutes later, both Smith and Turpin left the cell and Smith left the Ridgeview Unit.

-2-

An investigation of the inmates' movements, all of which were recorded by camera, was conducted. Turpin was initially charged with the violation of "being in a restricted or unauthorized area," to wit, not her assigned cell. The matter was set for an administrative hearing on April 23, 2018.

Before the hearing date, a second investigation was conducted of the events by another officer who amended the charge Turpin was facing to "eluding or resisting apprehension," a violation of greater significance. The hearing was postponed by a week.

At the hearing on April 30, 2018, Turpin admitted she had committed the lesser violation with which she was originally charged, but denied guilt of the amended charge. Turpin argued that Smith had only been charged with the former offense and not the grander offense and that parity required that they both be charged similarly for the same wrongful conduct. The relief was denied, and Turpin was found guilty of both offenses because she "knowingly stayed in a cell, not assigned to her, with another inmate, (sic) who lived in another living unit for over 23 minutes (sic)." She was punished with thirty (30) days disciplinary

segregation and loss of ninety (90) days of good time.[1]  She appealed the finding to the warden, as Department of Corrections (DOC) regulations provide.

In her appeal to the warden, Turpin again asserted that parity required her conviction and sentence be no more than received by Smith.  Alternatively, she requested that her sentence be suspended.  The warden denied relief except to restore the ninety (90) days' good time, affirming the convictions for both charges.  Specifically, on the issue of parity, the warden found that in addition to entering the cell of another inmate with Smith, Turpin, a resident of the Ridgeview Unit, entered the dayroom for the purpose of ascertaining whether any staff were present, so that Smith, who was not a resident of the Ridgeview Unit, could leave without detection.

After the warden denied her appeal, Turpin filed a petition for declaration of rights in the Shelby Circuit Court, challenging the findings of the warden and arguing there was no evidence to support the charge of "eluding or resisting apprehension."  Turpin pointed out that no new facts were alleged in the second investigative report different from those in the first report which would support the amended, greater charge of "eluding or resisting apprehension."

---

[1] "Good behavior in an amount not exceeding ten (10) days for each month served, to be determined by the department from the conduct of the prisoner[.]"  Kentucky Revised Statute (KRS) 197.045(1)(b)1.

Further, she argued that the hearing officer cited no facts in his findings which would support the greater charge.

The circuit court dismissed the petition, finding that there was evidence in the warden's findings to support the greater charge. The circuit court held that when Turpin exited the cell and left Smith behind, walked through the dayroom and then returned to Smith in the cell, it was reasonable to surmise she did so in an attempt to ensure no staff were present such that the "coast was clear" for Smith to leave the unit to which she was not assigned. The circuit court also held that such behavior was properly considered an attempt to elude apprehension. Turpin appeals that determination to this Court.

## 2020-CA-1416-MR

On October 13, 2017, Turpin was interviewed by Internal Affairs regarding a staff member's wrongdoing. The allegation involved an instructor who had accessed the Kentucky Offender Management System (KOMS) at Turpin's behest. The access was to determine what investigations and/or disciplinary proceedings were being conducted into Turpin or several other inmates, including Karen Brown, Turpin's co-defendant in the murder trial for which Turpin is serving a sentence of life without parole for twenty-five (25) years.[2] Based on her

---

[2] *Turpin v. Commonwealth*, 780 S.W.2d 619 (Ky. 1989), *abrogated by Thomas v. Commonwealth*, 864 S.W.2d 252 (Ky. 1993); *Brown v. Commonwealth*, 780 S.W.2d 627 (Ky. 1989).

answers to the officer's queries, Turpin was charged with "pursuing/having a non-correctional relationship with a non-inmate."

At the hearing held pursuant to the charge, Turpin denied attempting to pursue a relationship with the instructor and alleged that the Internal Affairs officer held her until she admitted her actions by providing a statement. In that statement, she stated that the instructor had made inappropriate remarks to her of a sexual nature. The hearing officer found her guilty of the charge because of her admissions to the Internal Affairs officer and assessed the maximum available penalties of fifteen (15) days' administrative segregation and the loss of sixty (60) days of good time credit.

Turpin appealed the determination to the warden. She argued that asking the instructor to look up information in KOMS did not amount to pursuing a relationship with a non-inmate as many other staff members will often look up such information for inmates with no expectations. The relief she requested was amendment to a reduced charge and suspension of the penalty of administrative segregation time.

The deputy warden denied the appeal and affirmed the penalty. Turpin filed a petition for declaration of rights in Shelby Circuit Court. The warden filed a motion to dismiss and the circuit court granted that motion. The circuit court found that asking a staff member to do something contrary to the

policies of the institution was by definition a non-correctional activity and that

asking a staff member for a "favor" constituted the fostering of an inappropriate

relationship. Turpin appeals the dismissal.

## STANDARD OF REVIEW

The standard of review of a trial court ruling on a petition for

declaration of rights is *de novo*.

> A motion to dismiss for failure to state a claim
> under CR 12.02(f) is a question of law and is therefore
> subject to *de novo* review. *Campbell v. Ballard*, 559
> S.W.3d 869, 870 (Ky. App. 2018) (citing *Carruthers v.
> Edwards*, 395 S.W.3d 488, 491 (Ky. App. 2012)). The
> pleadings must be liberally construed in a light most
> favorable to petitioner, and the allegations contained in
> the complaint are taken as true. *Id*. at 870-71.

*Hopkins v. Smith*, 592 S.W.3d 319, 322 (Ky. App. 2019).

In this circumstance, the circuit court is itself acting as a reviewing

court, ensuring that the minimal due process standards were afforded the inmate in

the prison administrative proceeding. The circuit court does not sit as a fact-

finding court in such actions, but rather conducts a review to ensure "some

evidence" supports the finding below and is constrained in its review by the

administrative record. *Smith v. O'Dea*, 939 S.W.2d 353, 358 (Ky. App. 1997)

("[W]e are persuaded that the "some evidence" standard of review provides courts

with a sufficient check upon adjustment committee fact-finding. Section 2 of our

Constitution is not compromised by this standard of review nor, in general, is it

-7-

compromised by judicial deference to the judgments of prison disciplinary committees and administrators[.]").  In *Smith*, *supra*, this Court announced that even when the Department of Corrections had moved to dismiss an inmate action, a summary judgment analysis is most appropriate.[3]

The review conducted by this Court is, in turn, qualified.  We must afford the administrative agency the necessary leeway to maintain discipline in the prison, a matter than falls within its particular expertise.  As such, our concern is primarily one of ensuring that the inmate received the required minimum due process.  We do not reweigh the facts and cannot substitute our judgment for that of the administrative agency.

> Where, as here, principles of administrative law
> and appellate procedure bear upon the court's decision,
> the usual summary judgment analysis must be qualified.
> The problem is to reconcile the requirement under the
> general summary judgment standard to view as favorably
> to the non-moving party as is reasonably possible the
> facts and any inferences drawn therefrom, with a
> reviewing court's duty to acknowledge an agency's

---

[3]     More precisely, the circuit court granted the appellee's motion to dismiss Smith's petition for failure to articulate a genuine controversy as required under KRS 418.040.  Similar to motions to dismiss for lack of controversy, [Kentucky Rule of Civil Procedure] CR 12 motions to dismiss for failure to state a claim, and CR 56 motions for summary judgment are typical Corrections Department responses to inmate declaratory judgment petitions.  For reasons appearing in the text below, we believe that a motion for summary judgment provides, in most cases, the most appropriate procedure and standards for addressing these petitions. We have tailored our discussion accordingly.

*Smith*, 939 S.W.2d at 355 n.1.

discretionary authority, its expertise, and its superior access to evidence. In these circumstances we believe summary judgment for the Corrections Department is proper if and only if the inmate's petition and any supporting materials, construed in light of the entire agency record (including, if submitted, administrators' affidavits describing the context of their acts or decisions), does not raise specific, genuine issues of material fact sufficient to overcome the presumption of agency propriety, and the Department is entitled to judgment as a matter of law.

*Id.* at 356.

## ANALYSIS

Our review is limited to discerning whether the circuit court applied the correct standard of review itself in evaluating the administrative actions conducted at the institution and whether such afforded Turpin proper procedural due process. Procedural due process in this context minimally requires advance written notice of charges, an opportunity to present evidence when possible, and written findings that include the evidence relied upon in finding a violation of institutional rules.

In the context of a prison disciplinary proceeding, the state is only required to provide advance written notice of the charges; provide an opportunity to call witnesses and present evidence when those events remain consistent with institutional safety and correctional goals; and to provide a written statement from the fact finder of the evidence relied on and the reasons for the disciplinary action. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 105 S. Ct. 2768, 86 L. Ed. 2d 356

(1985). "[S]o long as the conditions or the degree of confinement to which the prisoner is subjected do not exceed the sentence which was imposed and are not otherwise in violation of the Constitution, the due process clause of the Fourteenth Amendment does not subject an inmate's treatment by prison authorities to judicial oversight." *Mahoney v. Carter*, 938 S.W.2d 575 (Ky. 1997).

*McMillen v. Kentucky Dep't of Corr.*, 233 S.W.3d 203, 205 (Ky. App. 2007).

In the charge involving Turpin's presence in a cell to which she was not assigned while in the company of Smith, Turpin argues that there was no additional evidence to support the amendment to the greater violation. The circuit court, however, found that it was her foray through the common room while Smith stayed behind in the cell which supported the administrative finding.

The court noted that the record established that Turpin alone exited the cell not assigned to either her or Smith and she alone walked through the empty common room and returned to the cell. Upon her return to the unauthorized cell, Turpin and Smith left the cell together and Smith proceeded out of the unit. The court noted that the warden's finding that the action performed by Turpin alone provided a factual basis for the finding, reasoning that Turpin entered the dayroom alone to ensure no staff was present. This allowed Turpin's fellow inmate to leave the unit undetected, as that inmate was not assigned to Turpin's unit and was not authorized to be present in the unit. Thus, some evidence supported that finding

and the motion to dismiss was properly entered. *Yates v. Fletcher*, 120 S.W.3d 728, 731 (Ky. App. 2003).

In the second action, Turpin argues that there was not sufficient evidence to support a finding that she pursued a relationship with the instructor, but simply asked him to look up information on her and other inmates, including a co-defendant, on KOMS and asked to use his electronics to show others a video of her son singing.[4] Again, our review is limited to whether there was "some evidence" to support the circuit court finding. An admission satisfies that standard. *Id.*

The circuit court noted that the reason that staff are not to do "favors" of the sort done here for inmates is because doing so changes the relationship between the inmate and the staff member.[5] This ruling gives the prison administration the deliberation needed to ensure that the prison remains a safe place for both inmates and staff.

> We note on the one hand the prison
> administration's compelling interest in order and in
> authority as a means to order. In a prison, where a state

---

[4] Turpin argues that the hearing officer omitted any reference to the video of her son singing, focusing only on the KOMS request. However, we find that the request to access KOMS alone is sufficient.

[5] Turpin alleges, apparently for the first time on appeal, that there was no policy specifically prohibiting such request by an inmate to a staff member, but acknowledges that there was a policy for staff not to "[d]iscuss another employee or inmate with or in the presence of an inmate." KCIW 03-02-01(B)(2), *Guideline for Interaction with an Inmate*, p. 2 (2013). We find this policy meets the "some evidence" standard.

of emergency and high alert is unrelieved, any defect in the administration's authority poses a risk of disruption. On the other hand, inmate declaratory judgment petitions, like the one before us, typically present uncomplicated factual situations and concern relatively minor interests (in slightly reduced sentences, for example, or marginally mitigated conditions of confinement). In light of these disparate interests and the circumstances in which they typically arise, we are persuaded that the "some evidence" standard of review provides courts with a sufficient check upon adjustment committee fact-finding.

*Smith*, 939 S.W.2d at 358.

## **CONCLUSION**

We find that Turpin was afforded proper procedural due process in that she was provided written notice of the charges against her and was provided a hearing, as well as written findings of fact. The circuit court engaged in a proper analysis, finding some evidence in the administrative record to support the findings and therefore granting the motions to dismiss in favor of the wardens. We affirm.

ALL CONCUR.

BRIEFS FOR APPELLANT:

J. Vincent Aprile II
Louisville, Kentucky

BRIEF FOR APPELLEE:

Angela T. Dunham
Frankfort, Kentucky