RENDERED: OCTOBER 14, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1270-MR

CAMERON MERRITT                                        APPELLANT

                     APPEAL FROM OLDHAM CIRCUIT COURT
v.                   HONORABLE JERRY D. CROSBY, II, JUDGE
                           ACTION NO. 21-CI-00183

SARAH FERGUSON, WARDEN,
ROEDERER CORRECTIONAL
COMPLEX; AND CHRISTOPHER WRIGHT,
ADJUSTMENT OFFICER                            APPELLEES

OPINION
REVERSING AND REMANDING

\*\* \*\* \*\* \*\* \*\*

BEFORE: CLAYTON, CHIEF JUDGE; CETRULO AND K. THOMPSON,
JUDGES.

CETRULO, JUDGE: Cameron Merritt ("Merritt"), an inmate at the Roederer

Correctional Complex ("Roederer"),[1] appeals, *pro se*, from an order of the Oldham

---

[1] As of the filing of this appeal, Merritt was an inmate at Little Sandy Correctional Complex.

Circuit Court dismissing his petition for declaratory judgment pursuant to KRS[2] 418.040.[3] After careful review, we reverse and remand.

**FACTS**

In September 2020, Merritt – in an attempt to prank fellow inmates – sprayed baby oil on the floor of a doorway of Unit 2, E Wing of Roederer. Merritt admits this action, and his movements are shown on video surveillance. While conducting a security round, Kentucky Department of Corrections ("DOC") Officer Calhoun ("Officer Calhoun") slipped on the baby oil. The briefs do not state that Officer Calhoun fell to the ground when she slipped, but she was later "sent for outside medical treatment." Following the incident, Officer Calhoun finished her rounds and advised the inmates that someone should clean up the oil; Merritt did so.

Merritt received a disciplinary write-up charging him with a violation of Corrections Policy and Procedure ("CPP") 15.2 Category VII Item 04. A disciplinary hearing was held by an Adjustment Officer, and Merritt was assessed with 30 days in disciplinary segregation and the loss of 1,460 days (four years) of

---

[2] Kentucky Revised Statute.

[3] "In any action in a court of record of this Commonwealth having general jurisdiction wherein it is made to appear that an actual controversy exists, the plaintiff may ask for a declaration of rights, either alone or with other relief; and the court may make a binding declaration of rights, whether or not consequential relief is or could be asked." KRS 418.040.

non-restorable good time, 730 days (two years) of which were suspended for 180 days. Merritt appealed to the Warden, who denied the appeal. Merritt then sought judicial review and filed a petition for declaratory judgment in Oldham Circuit Court. Thereafter, the circuit court granted Roederer's[4] motion to dismiss Merritt's petition for failure to state a claim pursuant to CR[5] 12.02(f). This appeal followed.

## PROCEDURE

"A petition for declaratory judgment pursuant to KRS 418.040 has become the vehicle, whenever Habeas Corpus proceedings are inappropriate, whereby inmates may seek review of their disputes with the Corrections Department." *Smith v. O'Dea*, 939 S.W.2d 353, 355 (Ky. App. 1997). Although Roederer filed a motion to dismiss in response to Merritt's petition, rather than a motion for summary judgment, this Court has held that summary judgment standards and procedures are most appropriate in these cases.[6] However, the typical summary judgment standard is insufficient to address the administrative discretion involved in the Department of Corrections' disciplinary procedures.

---

[4] We will refer to the Appellees as "Roederer" because the named appellees, the Warden and Adjustment Officer, are named in their official capacity.

[5] Kentucky Rule of Civil Procedure.

[6] "CR 12 motions to dismiss for failure to state a claim, and CR 56 motions for summary judgment are typical Corrections Department responses to inmate declaratory judgment petitions. . . . [W]e believe that a motion for summary judgment provides, in most cases, the most appropriate procedure and standards for addressing these petitions." *Smith*, 939 S.W.2d at 355 n.1.

This Court has described the applicable standard for addressing prison disciplinary actions as follows:

> Where, as here, principles of administrative law and appellate procedure bear upon the court's decision, the usual summary judgment analysis must be qualified. The problem is to reconcile the requirement under the general summary judgment standard to view as favorably to the non-moving party as is reasonably possible the facts and any inferences drawn therefrom, with a reviewing court's duty to acknowledge an agency's discretionary authority, its expertise, and its superior access to evidence. In these circumstances we believe summary judgment for the Corrections Department is proper if and only if the inmate's petition and any supporting materials, construed in light of the entire agency record (including, if submitted, administrators' affidavits describing the context of their acts or decisions), does not raise specific, genuine issues of material fact sufficient to overcome the presumption of agency propriety, and the Department is entitled to judgment as a matter of law.

*Id.* at 356.

"These petitions thus present circumstances in which the need for independent judicial fact[-]finding is greatly reduced. The circuit court's fact-finding capacity is required only if the administrative record does not permit meaningful review." *Id.* Accordingly, the circuit court presumed that Roederer acted appropriately in denying Merritt's petition, and that order may only be reversed if Merritt can raise specific, genuine issues of material fact that overcome that presumption.

## ANALYSIS

On appeal, Merritt argues that he should have been charged with violating CPP 15.2 Category VII Item 001 – physical action against an employee or non-inmate – *not* Item 004 – physical action resulting in the death or injury of an employee or non-inmate. Merritt admits his action but argues that there was no evidence of a resulting injury to a DOC employee; he argues that sending Officer Calhoun for a medical assessment was proof of a *policy*, not an *injury*. To the contrary, Roederer claims that "seeking of medical treatment is sufficient evidence for the adjustment officer to infer that the officer who slipped on the baby oil sustained some injury." The circuit court agreed with Roederer and found "some evidence" to be supported by 1) camera footage showing Merritt spraying the baby oil, and 2) the note that Officer Calhoun had to seek outside medical treatment.

First, we must acknowledge that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S. Ct. 2963, 2975, 41 L. Ed. 2d 935 (1974) (citation omitted). This principle is reflected in the "some evidence" standard adopted in *Smith*: if any evidence in the record supports the conclusion made by the disciplinary board, we must affirm. *Smith*, 939 S.W.2d at 358. "Even 'meager' evidence will suffice." *Ramirez v. Nietzel*, 424 S.W.3d 911, 917 (Ky. 2014) (citing *Superintendent, Mass.*

*Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 457, 105 S. Ct. 2768, 2775, 86 L. Ed. 2d 356 (1985)). More specifically, because Merritt was sanctioned as a result of "injuring" Officer Calhoun, there must be "some evidence," *any* evidence, of an injury. *Id*. "Admittedly, our review of prison disciplinary cases is materially limited. But a review so limited as to be meaningless cannot satisfy the requirements of due process." *Id.* at 916. Despite these "meager" requirements, we cannot find *any* evidence that an injury occurred.

In 1997, this Court found an *inference* to be sufficient to satisfy the "some evidence" standard. *Smith*, 939 S.W.2d at 357. In *Smith*, an inmate's family member was found to have marijuana during a pre-admission search. *Id.* at 355. At a disciplinary hearing, the Adjustment Officer determined that although the inmate disavowed any knowledge of the contraband, the inmate likely knew of or requested the marijuana. *Id.* Upon appeal, this Court determined that "[a]lthough the evidence of [the inmate's] involvement in the attempted smuggling is not compelling, the inference is reasonable that he, at some time, communicated to his daughters a willingness to receive such contraband." *Id.* at 357.

Here, however, there is no such reasonable inference. If the surveillance video had shown Officer Calhoun fall to the ground, grab her back, walk with a limp, or cry out – after the slip – then we could infer that she was injured. However, the video shows no fall to the ground, no outward gesture of

pain, nor was there testimony that she cried out or complained. Further, there were no medical records presented nor testimony of what "the injury" was. There was no evidence presented to explain if Roederer had a policy of sending employees for precautionary medical examinations or if only an actual injury warranted such action.

Additionally, the *Smith* Court accepted an inference as "some evidence," in part, because it understood the importance in a prison's ability to maintain authority.

> Prisons are a vital part of the government's effort to preserve social order and domestic tranquility. They provide this fundamental benefit, however, only at the cost of becoming places where the risk of disorder and violence is greatly heightened.
>
> . . . .
>
> In a prison, where a state of emergency and high alert is unrelieved, any defect in the administration's authority poses a risk of disruption.

*Id.* at 357-58.

We wholeheartedly agree; however, we note two very dramatic factual distinctions. First, the *Smith* Court appropriately determined that a prison administration has a compelling interest in order and in authority, especially when weighed against an inmate's loss of "relatively minor interests (in slightly reduced sentences, for example, or marginally mitigated conditions of confinement)." *Id.*

at 358.  In contrast, Merritt's losses were not "minor"; he lost *four years* of good time credit.  Second, illegal drugs and/or contraband – as in *Smith* – pose a serious risk to the "social order and domestic tranquility" of a prison system.  Baby oil lacks that same gravitas.

In 2003, this Court again addressed an inmate appeal of disciplinary action in *Yates v. Fletcher*, 120 S.W.3d 728 (Ky. App. 2003).  In *Yates*, correctional officers found a four-pound can of tuna that was stolen from the kitchen and loose sugar in a creamer container in an inmate's bed area.  *Id.* at 729.  The inmate received disciplinary write-ups for possession of stolen state property and for obtaining goods under false pretenses.  *Id*.  A hearing by the Adjustment Committee found the inmate guilty of both charges and assessed forfeiture or the loss of *60 days* good time on each charge.  *Id*.  This Court determined that although he was not present at the time of the tuna discovery, he had constructive possession over it because it was found in his laundry bag.  *Id*. at 730.  As it related to the creamer, the inmate admitted it was there and that he knew it was sugar in the creamer container.  *Id*. at 731.

We agree with the holding in *Yates*; that the institution had presented "some evidence" that was sufficient to affirm the disciplinary action of 60 days good time for each theft.  However, here we lack *any* evidence of injury.  That void becomes especially glaring when compared to the relatively major loss of inmate

-8-

interest, compared to other Kentucky precedent. For example, in *Million v. Raymer*, 139 S.W.3d 914 (Ky. 2004), an inmate pled guilty to an inappropriate relationship with a correctional officer and was found guilty of a contraband charge, and the institution penalized him with the loss of 180 days of accumulated good time, 180 days of telephone restriction, and 90 days in disciplinary segregation. *Id*. at 916. After a successful appeal to the Warden, a second hearing found the inmate "guilty of the contraband charge but his penalty was reduced to 54 days in segregation, which he had already served." *Id.*

Therefore, a genuine issue of material fact exists – whether any injury resulted from Merritt's actions – and consequently, Roederer is not entitled to judgment as a matter of law. Consequently, we must conclude the court erred by granting Roederer's motion to dismiss. We simply remand for the circuit court to address that issue.

## CONCLUSION

Accordingly, for the reasons stated herein, we REVERSE the judgment of the Oldham Circuit Court and REMAND for further proceedings consistent with this Opinion.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Cameron Merritt, *pro se* <br> Sandy Hook, Kentucky | Edward A. Baylous II <br> Frankfort, Kentucky |