RENDERED:  MARCH 10, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0369-MR

MARCUS IVY                                                 APPELLANT

v.                   APPEAL FROM FRANKLIN CIRCUIT COURT
HONORABLE PHILLIP J. SHEPHERD, JUDGE
ACTION NO. 21-CI-00036

KENTUCKY PAROLE BOARD                                APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, DIXON, AND EASTON, JUDGES.

EASTON, JUDGE:  Appellant Marcus Ivy ("Ivy") filed for declaratory judgment in the Franklin Circuit Court after his parole was revoked by the Kentucky Parole Board ("Parole Board").  Ivy appeals from the circuit court's order granting the Parole Board's motion for summary judgment.  Ivy contends the revocation of his parole was constitutionally deficient and not supported by the facts.  Upon review of the record and applicable legal authority, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Ivy was serving a ten-year sentence for second-degree burglary until released on parole on June 21, 2018. On April 3, 2019, Ivy's parole officer conducted a home visit at Ivy's listed address. When the parole officer arrived, a female resident opened the door and indicated Ivy did not live there and that she did not know him. That same day, Ivy failed to meet with his reentry coordinator for a scheduled meeting. The parole officer then called Ivy, who said he would be at the parole office in ten minutes. Ivy never appeared.

On April 8, 2019, Ivy's parole officer tried and failed to reach Ivy by telephone. The parole officer left a voicemail for Ivy instructing him to report by 4 p.m. Ivy still did not meet with his parole officer. That same day, the parole officer received multiple photographs of Ivy attending a sports hall of fame banquet in Evansville, Indiana. Ivy did not have permission to attend this banquet, which is outside his designated county of residence and required him to leave the state.

On April 11, 2019, the parole officer once again tried to call Ivy. An individual who identified himself as Ivy's friend answered the telephone. The parole officer left a message with the friend for Ivy to report. Ivy did not return his parole officer's call. A parole violation warrant was issued on April 19, 2019.

Ivy absconded for nearly six months until he was arrested in Indiana in October of 2019 on charges of breaking and entering and providing false information. Ivy was found guilty of providing false information. Once he was released from an Indiana jail, Ivy was brought back to Kentucky for the parole revocation proceedings.

Ivy was given notice of the initial probable cause hearing. Ivy waived the probable cause hearing. A final revocation hearing was held on January 28, 2020, before Administrative Law Judge Kimberly A. Morris ("ALJ"). Ivy testified on his behalf. Ivy admitted to leaving the state, gave mitigating testimony that he needed to care for his adult daughter, and generally denied being non-compliant with the terms of his parole. The ALJ determined by a preponderance of the evidence that Ivy violated conditions of his parole. The ALJ then referred the matter to the Parole Board for a final decision.

On April 9, 2020, the Parole Board rendered its final decision. The Parole Board found Ivy violated the conditions of his parole by absconding. The Parole Board additionally found Ivy's failure to comply constituted a significant risk to prior victims or the community at large and Ivy could not be appropriately managed in the community. Ivy's parole was revoked, with re-eligibility for parole in twelve months. The Parole Board based its decision upon the ALJ's findings of fact, which were incorporated in its decision by reference.

Ivy then filed this declaratory judgment action seeking relief directing the Parole Board to vacate its prior decision to revoke and to reinstate Ivy's parole. Ivy and the Parole Board filed competing motions for summary judgment. The circuit court granted the Parole Board's motion for summary judgment. The circuit court held Ivy was given due process during the revocation proceedings and that the Parole Board did not abuse its discretion in revoking Ivy's parole. This appeal followed.

**STANDARD OF REVIEW**

"The standard of review on appeal of a summary judgment is whether the circuit judge correctly found that there were no issues as to any material fact and that the moving party was entitled to a judgment as a matter of law." *Pearson ex rel. Trent v. Nat'l Feeding Systems, Inc.*, 90 S.W.3d 46, 49 (Ky. 2002). Summary judgment is only proper when "it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). In ruling on a motion for summary judgment, the Court is required to construe the record "in a light most favorable to the party opposing the motion . . . and all doubts are to be resolved in his favor." *Id*.

Summary judgment consideration is to some extent qualified in the context of a declaration of rights in cases like this because the decision is usually

based upon an existing record to which additional evidence is not added. *Smith v. O'Dea*, 939 S.W.2d 353 (Ky. App. 1997). Upon judicial review, courts defer to agency fact-finding. *Roach v. Kentucky Parole Board*, 553 S.W.3d 791, 793 (Ky. 2018). A reviewing court may reverse and remand the Parole Board's order as to determinations of fact if it finds that the Parole Board's final order is arbitrary, capricious, or characterized by abuse of discretion. *Id.* Agency determinations of law are reviewed *de novo. Id.*

## ANALYSIS

Ivy raises two issues on appeal: (1) the circuit court erred by concluding it was constitutionally permissible for the Parole Board to base its revocation decision upon a final hearing conducted by an ALJ; and (2) the evidence presented at the final hearing conducted by the ALJ did not the support the findings that Ivy was a significant risk to previous victims or the community at large and could not be appropriately managed in the community.

Ivy challenges the constitutionality of the Parole Board's procedure used to revoke his parole. As previously mentioned, the Parole Board based its decision to revoke upon the ALJ's findings of fact, which were incorporated in the decision by reference. Ivy argues that constitutional and statutory authority requires that the Parole Board, and not an ALJ, conduct final revocation hearings.

For parole revocations, due process first requires a preliminary hearing to determine probable cause that a violation occurred. *Morrissey v. Brewer*, 408 U.S. 471, 485, 92 S. Ct. 2593, 2602, 33 L. Ed. 2d 484 (1972). If probable cause is shown, a final revocation hearing takes place. *Id.* at 487-88, 92 S. Ct. at 2603-04. The court in *Morrissey* summarized the following minimum requirements for a final hearing to satisfy due process.

> (a) [W]ritten notice of the claimed violations of parole [or probation];
>
> (b) disclosure to the parolee [or probationer] of evidence against him;
>
> (c) opportunity to be heard in person and to present witnesses and documentary evidence;
>
> (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);
>
> (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and
>
> (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole [or probation].

*Id.* at 489, 92 S. Ct. at 2604. "[The final revocation] hearing must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined

warrant revocation." *Id.* at 488, 92 S. Ct. at 2604. As Ivy waived his probable cause hearing, he only challenges the constitutionality of his final hearing.

In *Jones v. Bailey*, 576 S.W.3d 128 (Ky. 2019), an offender's parole was revoked by the Parole Board for failure to complete a sex offender treatment program. In *Jones*, an ALJ conducted the preliminary hearing and found probable cause to believe the offender violated the conditions of his parole. *Id.* at 134. The Parole Board then conducted the final hearing. *Id.* The offender was not allowed to present new evidence or witnesses at the final hearing. *Id.* After the hearing, the Parole Board revoked the offender's parole. *Id.* However, the Parole Board did not find by a preponderance of the evidence that the offender violated his parole; instead, the Parole Board revoked his parole based solely upon its review of the ALJ's probable cause finding. *Id.*

The court in *Jones* found the offender did not receive the minimal due process required by *Morrissey* when his parole was revoked solely upon a probable cause finding. *Jones*, 576 S.W.3d at 143. *Jones* held the Parole Board is the body charged with ultimately determining the findings of fact. *Id.* at 144. *Jones* ruled any revocation of post-incarceration supervision requires the Parole Board to find by a preponderance of the evidence that the offender is guilty of the alleged violation. *Id.* at 145.

Ivy argues that the standard set by *Morrissey* and *Jones* requires the final hearing be conducted *personally* by the Parole Board. Neither case supports this argument. Neither case prohibits the Parole Board from delegating fact finding to an ALJ and then incorporating those findings of facts in its ultimate decision. *Morrissey* foresaw the necessity of using hearing officers during the revocation process. "The granting and revocation of parole are matters traditionally handled by administrative officers." *See Morrissey*, *supra*, at 486, 92 S. Ct. at 2603.

*Jones* implied that hearing officers could be used to conduct final hearings: "Unless the Board has received new evidence or information submitted in writing in advance of the final revocation hearing or a special hearing is held at the Board's discretion, and unless an exception is met, the Parole Board considers only the evidence in the administrative record made before the ALJ to determine what action should be taken[.]" *Jones*, *supra*, at 141. In other words, the Parole Board is permitted to conduct its final hearing by relying on the record made by an ALJ so long as the hearing before the ALJ is understood to be the final hearing. The problem in *Jones* was the record was only related to a preliminary hearing to determine probable cause. That problem is not presented when the ALJ conducts the final hearing process before submission to the Parole Board.

Further, there is also statutory authority for an ALJ to conduct final hearings. Kentucky Revised Statute ("KRS") 439.341 authorizes hearing officers to conduct probable cause hearings, as well as any other duty assigned by the board. Ivy argues KRS 439.440 mandates the Parole Board personally conduct final hearings: "Any prisoner returned to state custody for violation of his or her rerelease shall be heard by the board within sixty (60) days on the propriety of his or her release." This is not persuasive as the intent of KRS 439.440 is to set the time in which a decision must be made and not who must conduct the final hearing.

In the current case, Ivy received a final hearing that complied with the requirements set forth in *Morrissey* and *Jones*. Ivy received written notice of the claimed violations of parole. The evidence against Ivy was disclosed. Ivy received the opportunity to be heard in person and to present witnesses and evidence. Ivy had the right to confront and cross-examine adverse witnesses.

A "neutral and detached" hearing officer, the ALJ, conducted the gathering of the evidence at the final hearing. The ALJ provided a written statement (which the Parole Board incorporated in its final decision for reference) as to the evidence relied on and reasons for revoking parole. In its final decision, the Parole Board found, by a preponderance of the evidence, that Ivy violated a

condition of his parole. There was nothing constitutionally deficient regarding Ivy's revocation proceedings.

Next, Ivy argues the evidence presented at the final hearing conducted by the ALJ did not the support the findings that Ivy was a significant risk to his previous victims or the community at large and could not be appropriately managed in the community. Pursuant to KRS 439.3106, individuals under supervision are subject to "[v]iolation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large, and cannot be appropriately managed in the community[.]" KRS 439.3106 applies to Parole Board decisions. *Murrell v. Kentucky Parole Board*, 531 S.W.3d 503 (Ky. App. 2017).

"The rule in Kentucky is that if there is substantial evidence in the record to support an agency's findings, the findings will be upheld, even though there may be conflicting evidence in the record." *Kentucky Comm'n on Human Rights v. Fraser*, 625 S.W.2d 852, 856 (Ky. 1981). The Parole Board noted its consideration of KRS 439.3106 and made the statutorily required findings. In addition, the Parole Board specifically referred to the findings made about Ivy's violations to support these findings. *Murrell* requires only "specific findings as it relates to the facts in light of KRS 439.3106." 531 S.W.3d at 507. The Parole

Board referred to the numerous findings of the nature and number of Ivy's violations to support the findings required by KRS 439.3106.

At the final hearing, Ivy admitted to leaving his designated county and the state without permission. Ivy committed a crime in another state. Ivy provided an incorrect or outdated home address to his parole officer. The parole officer tried and failed to reach Ivy several times. Ivy absconded for almost six months. There was substantial evidence presented at the final hearing for the Parole Board to reasonably find Ivy was a significant risk to his previous victims or the community at large and could not be appropriately managed in the community. The circuit court correctly determined the Parole Board did not abuse its discretion in revoking Ivy's parole.

## CONCLUSION

The procedures used to revoke Ivy's parole met minimum due process standards. The Parole Board's revocation of Ivy's parole was supported by substantial evidence. We affirm the Franklin Circuit Court's Order granting the Parole Board's motion for summary judgment.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Katelyn E. Price
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Edward A. Baylous, II
Frankfort, Kentucky